## Shaffer *et al.* versus Shaffer *et al.*

*Widow refusing to take under the will of a testator, entitled to dower at common law, must claim it in the Common Pleas and not in the Orphans' Court.*

1. The dower to which the widow of a testator is entitled, who refuses to take under the will, is dower at common law, and it cannot be proceeded for in the Orphans' Court: the Court of Common Pleas both at law and in equity has exclusive jurisdiction.

2. Thus where the testator had devised his lands to his sons in severalty subject to a provision in favour of the widow, *held* that upon her election not to take under the will, she could not claim under the intestate law, for there was no intestacy; but only the rights vested in her by marriage before the decease of her husband, or her dower at common law, to be recovered in the Common Pleas: and that it was error to receive and proceed upon her petition for partition in the Orphans' Court.

APPEAL from the Orphans' Court of *Somerset county.*

This was an appeal by David Shaffer and others, heirs of Henry

Shaffer, deceased, from the decree of the Orphans' Court confirming the report of the auditor appointed by the court to ascertain the amount of the dower of Margaret, the widow of deceased, and fix the amount of the recognisance to be given by devisee, in the will of Henry Shaffer deceased.

The case was this:—Henry Shaffer made his last will on the 21st day of September, A. D. 1857, and died 2d June 1862, leaving a widow and seven children, all of whom were of age. Probate of the will was made on the 28th June 1862, which contained the following provisions:—

"I give and bequeath to my son Ephraim Shaffer my home-place containing one hundred and ninety-one acres, subject to the following reservations, to wit:—That my wife may reside in the house which we now occupy as long as she lives, the said Ephraim to feed and pasture her two cows with his own; my wife is also to have the use of one-half of the garden, and as much fruit of all kinds on the premises as she needs, or that share of the orchard as it has formerly been divided. Said Ephraim is also to furnish her with wood ready cut and coal for her stoves as much as she may want; he is also to do her milling and deliver her flour in the house. Said Ephraim is to give my wife twelve bushels of wheat, ten bushels of rye, and fifteen bushels of oats yearly during her natural life.

"And my son Ephraim shall pay to my heirs, of which he is one, the sum of $2800, in the following manner, to wit:—one year after the decease of myself $400, and from thence yearly $200 until the $2800 are paid to my heirs.

"I give and bequeath to my son Henry Shaffer, the farm on which he now resides, containing one hundred and fifty-nine acres, for which he is to pay to my heirs, of which he is one, $2100: $300 one year after my death, and from thence yearly $200 until all is paid. I will and bequeath to my son Michael Shaffer the farm on which he now resides, containing about two hundred and forty-nine acres, for which he is to pay to my heirs, of which he is one, $2700: $300 to be paid one year after my death, and from thence $200 yearly until all is paid." ·

The widow came into court and elected to take under the intestate laws. Subsequently she presented a petition to the Orphans' Court, praying for a writ of partition and valuation, which issued in regular form, and the sheriff held an inquest and made report to the Orphans' Court appraising the several tracts of land as follows:—

No. 1. The homestead containing two hundred and two acres and one hundred and four perches, being the same on which Ephraim resides, and which was devised to him, was appraised at $3242.60.

No. 2. Containing one hundred and sixty-nine acres and one hundred and twenty-seven perches, being the tract on which

Henry resides, and which was devised to him, was appraised at $2199.85.

No. 3. Containing two hundred and sixty-three acres and twenty-three perches, being the tract on which Michael Shaffer lives, and which was devised to him, was appraised at $2896.38.

On the 24th of August 1863, Ephraim Shaffer, Henry Shaffer, and Michael Shaffer presented their petition, setting forth the fact of the devise to them respectively, the refusal of the widow to take under the will, the appraisement, &c., and praying the court to appoint an auditor " to ascertain the respective rights of all parties interested under the will and to fix the amount of recognisances to be entered into by your petitioner to the widow, and how the principal sum shall be paid at her death, and to do and ascertain such other things as may be necessary in the premises."

On this petition the court appointed H. F. Schell, Esq., auditor, and a commission issued to him conferring the powers petitioned for.

The auditor proceeded to distribute the amount of money provided to be paid out to the heirs by the will, &c., and assigned the dower of the widow. To this report several exceptions were filed; but the court below dismissed the exceptions and confirmed the report; which was the error assigned.

*W. J. & H. L. Baer*, for appellants.

*A. J. Colborn*, for appellees.

The opinion of the court was delivered, June 29th 1865, by

AGNEW, J.—This case appears to have been sadly miscarried. Margaret Shaffer having refused to accept the provision made for her in the will of her husband Henry Shaffer, elected to take her dower in the real estate. She then presented her petition to the Orphans' Court for partition of the real estate of her husband. This was manifestly erroneous. The jurisdiction of the Orphans' Court to make partition, was originally confined to the estates of intestates; lands held in joint tenancy or in common under deeds, wills, or other common-law assurances, being the subject of the jurisdiction of the Court of Common Pleas. The Act of 13th April 1840, § 4, extended the jurisdiction of the Orphans' Court to cases of testacy, where the parties or some of them were minors, or where the course of descent under the intestate law was not altered by the will. This was followed by the Act of 10th April 1849, § 10, conferring jurisdiction in cases of testacy, when the estate was in whole or in part devised to two or more children, either in equal or in unequal proportions. To remedy the inconveniences of having first a common-law partition between the heirs of a decedent and his co-tenants, the Act of 13th March 1847, § 1, further

[Shaffer *et al. v.* Shaffer *et al.*]

authorized a valuation in the Orphans' Court of the interest of the decedent in property held in common or joint tenancy with others. But where lands are held in severalty by a devisee, subject only to the common-law right of dower, no jurisdiction has yet been conferred upon the Orphans' Court.

In this case the testator devised separate and distinct tenements to each of three of his sons: in Ephraim's case, subjecting his tract of land to certain devises and interests in favour of the testator's widow. It is clear there was nothing subject to partition with any one, in each of the properties, as the devises stood before the widow's election. Even in Ephraim's tract, the widow's right of possession was defined as to the parts she should enjoy, and her remaining interest was a change merely. But when she elected to take her dower, she clearly fell back, not upon the intestate law, for there was no intestacy in the case, but upon her superior rights vested in her by marriage, before the decease of her husband.

The right of the husband to devise his real estate away from his wife was indisputable as to all his real estate, except that in which the wife had obtained vested rights by settlement or by dower. As to personal estate this right was absolute, except when controlled by a marriage settlement. But the revised Act relating to wills of April 8th 1833, § 11, after declaring that a devise or bequest by a husband to his wife should be in lieu of dower in his estate, declared, that nothing contained in this act should deprive the widow of her choice, either of dower or of the estate or property so devised or bequeathed. Dower is a term so well understood, it cannot be supposed that acts drawn up by professional men engaged in the revision of the laws, intended a departure from the legal and technical meaning of the term. The same word is used in the Act 29th March 1332, providing a legal proceeding to compel the widow to make her election of her dower or of the provisions of her husband's will. But we have also the benefit of an express decision upon the nature of her dower under a refusal to accept the provision of the will. In the case of Hinnerschitz *v.* Bernhard's Executor, 1 Harris 518, Chief Justice Gibson thus disposes of the question, in a few words, deciding that there is in such a case no intestacy ; that the dower she takes is by the common law, and cannot be proceeded for in the Orphans' Court. The doctrine of this case is recognised by my Brother Read, in Paul *v.* Paul, 12 Casey 280, and still more recently in Kent *v.* Bradford, 7 Wright 474, by my Brother Strong, who has discussed the subject carefully and fully. I have considered it proper to state the nature of a widow's estate of dower, after refusing to take under the will at some length, in consequence of the remarks of Justice Coulter, in Melizet's Appeal, 5 Harris

454, which might seem to leave a question as to the meaning of the term. The dower being at common law, the jurisdiction belongs to the Common Pleas both in law and equity, the powers of chancery in this respect being extended to the several Courts of Common Pleas throughout the state.

This is sufficient to dispose of the case, as the want of jurisdiction in the Orphans' Court goes to the foundation of the proceedings. But we may also say, that the principle of distribution adopted by the auditor, if we have been able to drag it out of the obscurity which appears to surround the report, would seem to be erroneous. The effect of the mode adopted by him, is to exonerate Ephraim entirely from the charges in favour of the widow, made upon his estate by the testator, and to cast them wholly upon the legatees of the money ordered to be paid by him. By the will he was to pay $2800 to the children of the testator, in addition to the charges in favour of the widow. It is manifest that the testator valued each tract devised, and his intention was to distribute this valuation equally among his children, deducting advancements. Now, in assessing the land devised to Ephraim at $2800, he manifestly must have taken into account the charge upon it in favour of his widow. But, if we understand the auditor's report, he charges the widow's share, viz., the interest upon the one-third of the valuation of the jury, which was $3242.40, wholly upon the $2800, bequeathed to the children of the testator, distributing to them only the balance after its payment. It is true that in the altered state of the will, caused by the refusal of the widow to accept, Ephraim was released from the provision made for her, and became liable only for her dower at common law. But it did not follow that the payment of the interest which represented her dower should fall wholly upon the money ordered by the testator to be paid by Ephraim, on the valuation of the land as devised, subject to the widow's provision. Equity requires that this encumbrance should be valued, and that each should contribute to its payment.

It is, therefore, now ordered and decreed, that all the proceedings in partition in the Orphans' Court, together with the proceedings before the auditor, be quashed and wholly set aside, and that the costs be paid equally by all the parties, including Margaret Shaffer the widow.