## Burgess, Adm'r, *versus* Burgess, Adm'r.

1. In order to establish a parol agreement between a father and son, to devise land to the son in consideration of his services to his father, the evidence must not only be direct, positive, express and unambiguous, but the contracting parties must have been brought face to face. The witnesses must have heard the bargain when it was made, or must have heard the parties repeat it in each others' presence.   A contract is not to be inferred from the declarations of one of the parties only.

2. The evidence in this case held insufficient to establish such a contract.

3. *Semble.* A contract to devise, may, in some instances, be enforced by a decree for specific execution; or, in case of breach, may furnish grounds for an action, and the damages will be computed according to the same measure as if the action were for breach of contract to convey.

March 17th, 1885.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.   GREEN, J., absent.

ERROR to the Court of Common Pleas of *Bradford county :* Of January Term 1885, No. 285.

Assumpsit by Russell P. Burgess, administrator, d. b. n. of Eben G. Terry, deceased, against Austin P. Burgess, administrator, c. t. a. of George Terry, deceased, to recover damages for the breach of an alleged contract to devise real estate.

On the trial the following facts appeared: In 1869 George Terry, then about seventy years of age, owned and lived upon the land in question.   His son, Eben Terry, then twenty-nine years of age, with his wife and child, lived on the farm with his father, having had his home there from childhood.   The plaintiff claimed that during this year 1869 George Terry agreed to devise to Eben all that part of the farm lying on the west side of the river road, except about fifty acres on the extreme western end, in consideration of which Eben was to maintain and take care of his father and mother during life. Eben, however, died August 15th, 1875, leaving a widow and minor children.   George Terry died September 18th, 1878, about two weeks after his wife's death, leaving a will dated February 18th, 1878, by which he devised the land in question

[Burgess v. Burgess.]

to another son, N. Willis Terry, who moved to his father's house and farm after Eben's death, and took care of his parents until they died.

To establish the alleged agreement by George Terry to devise the land to Eben, the plaintiffs offered the following evidence:

Uriah Terry, nephew of George Terry, testified that: George Terry came to him in 1869 with a deed to Eben for the said land, and asked Uriah to witness it; but he declined, and advised George to keep his property in his own hands; that George afterwards talked to witness about making a will giving the land west of the road, except 50 acres, to Eben, in consideration of the latter's caring for him and his wife during life. Uriah further testified that the Sunday after Eben's death, he was helping George Terry turn Eben's cattle into the field; that George said: "I want to do justice between all my grandchilden, and what disposition to make I do not know. If they were old enough to carry out the provisions I made with their father . . . . ; I never expected to have any of this thing come into my hands again. Eben was to do all these things, and he did it to my satisfaction."

Two other witnesses, Miller and Bowman, testified that they signed a will, as witnesses, for George Terry in 1869; that he read it over in their hearing, and by it devised said land to Eben, who was to take care of and maintain his father and mother during their lives. All three witnesses testified that, after the execution of this will, Eben took charge of and managed this part of the farm as his own; erected a valuable barn, stumped certain fields, put the stumps in fences, cleared about twelve acres and dug ditches. The witnesses placed the value of these improvements at about $1,500. J. B. Horton, a merchant, testified that Eben told him to let his father have such things as he wanted out of the store, and that he would pay for them, which was done. The evidence further showed that Eben did take care of his father and mother from 1869 until his death, when George Terry took N. Willis Terry into his family; and further, that the use of the farm was worth about fifty dollars a year more than the maintenance of George Terry and his wife.

The plaintiff claimed as damages, the value of the work and labor of Eben on the farm, and of the improvements he put on it, less the value of the materials he took from the farm in making said improvements, and less, also, fifty dollars a year for the use of the farm in excess of the cost and expense of caring for his parents.

The defendant set up the following grounds of defence: *First.* The alleged contract was single and entire, and was

not fully performed. *Second.* The evidence is not so direct, certain and positive as the law requires, to establish such a contract between father and son. *Third.* The claim is barred by the Statute of Limitations. *Fourth.* If the contract is proved the plaintiff's damages are only for what he expended in the support of George Terry and wife, and it appearing that the use of the farm was worth more than such support, plaintiff cannot recover.

The court refused to affirm points submitted by the defendant embodying this defence, and charged the jury, *inter alia*, as follows:

"I therefore submit the question, "Did George Terry prevent, disaffirm or waive a performance of the contract after Eben's death? If he did the plaintiff may recover so far as relates to this objection. If he did not he cannot recover. The evidence of Miller and Major Terry is that Willis Terry came in immediately after Eben's death, and thenceforth took charge of the farm and cared for his father and mother until they died, this evidence is uncontradicted, and is submitted to you to find whether there was a waiver or disaffirmance or not. . . . . . The plea of the Statute of Limitations is not a bar. It is true Eben died August 15th, 1875, and this suit was not brought until March 9th, 1882, but George Terry died September 18th, 1878, and no letters were issued upon his estate until August 10th, 1881. The statute does not begin to run until the right of action accrues. It did not begin in this case to run until the death of George Terry. I think I may safely (say) this from the rule in the cases of Bash *v.* Bash, 7 Barr, 260, and Marsteller *v.* Marsteller, 12 Norris, 350. . . . . . By this evidence the plaintiff claims to have established such arrangement or contract as entitles him to recover as damages the value of the work and labor of Eben on the farm, and for the improvements he put upon it, less the value of the materials he took off the farm in erecting these improvements, and less also $50 a year, the use of the farm in excess of the cost and expenses of caring for and maintaining his parents. The alleged contract between George Terry and Eben was executory, and hence the measure of damages is the value of his labor, and the improvements put upon the farm, less the value of the materials taken off the farm and put into the improvements, and less also $50 a year, the value of the farm over and above the cost of supporting George Terry and wife, provided you find Eben relied upon the contract in making the improvements."

Verdict for plaintiff and judgment thereon, whereupon the defendant took this writ, assigning for error the refusal of his points, and the parts of the general charge above cited.

[Burgess *v*. Burgess.]

*William Little* (with whom was *S. W. Little*), for plaintiff
in error.—The evidence fails to disclose any express or posi-
tive contract. It does not show that the son ever saw the
will of 1869, or knew its provisions. It does not show that
the minds of father and son ever united on its terms, or
agreed upon its obligations. There was no change in the
household. The son had always lived at home, and things
went on after the will just as before. The money which paid
for the improvements and taxes was derived from the farm.
It was clearly error, under the cases, to permit the jury to
infer a contract between father and son upon the strength of
such evidence: Poorman *v*. Kilgore, 37 Pa. St., 309; Shell-
hammer *v*. Ashbaugh, 2 Norris, 24: Harris *v*. Richey, 6 P. F.
S., 395; Miller's Appeal, 4 Out., 571. The relation between
the parties prevents an implied assumpsit to pay for services:
Lynn *v*. Lynn, 5 Casey, 369; Smith *v*. Milligan, 7 Wr., 107;
Duffey *v*. Duffey, 8 Id., 399; Schoch *v*. Garrett, 19 P. F. S., 144.

*D'A. Overton* (with whom was *B. M. Peck*), for defendant
in error.—There was direct, positive and uncontradicted evi-
dence of a contract between the father and son, testified to
by Miller, Bowman and Uriah Terry; they testified to the
contract and the making of a will in pursuance of it. The
acceptance of the contract was fully shown by the acts of
Eben Terry, and the admissions of his father. The evidence
of the witnesses was that after the first will was signed, Eben
G. Terry assumed control and ownership as he had never
done before, had the land assessed to himself, paid the taxes,
store bills, etc., giving orders to merchants to let them have
whatever they called for on his account, built upon the farm,
cleared the land, pulled the stumps, and improved the farm
in many other ways, and tenderly and generously cared, and
provided for his father and mother, until his death; the old
gentleman over and over again, both before and afterwards,
telling what the contract was, and his entire satisfaction with
it. In the case of Hertzog *v*. Hertzog, 5 Casey, 465, the court
says: "we concede that in a case of this kind an express con-
tract may be proved by indirect or circumstantial evidence.
If the parties kept accounts between them these might show
it." In Hess' Estate, 13 Phila., 285, the court distinctly recog-
nize the principle that an express contract may be proved in
such cases by the unequivocal acts of the decedent: See also
Miller's Appeal, 4 Out., 568.

Mr. Justice CLARK delivered the opinion of the court,
October 5th, 1885.

This action is brought to recover damages for the breach of

an alleged contract to devise real estate. George Terry in the year 1869 owned, and resided upon, the land in question; he was about seventy-one years of age, physically infirm, and therefore unable to carry on the work at the farm. His son, Eben G. Terry, who was twenty-nine years of age and married, had from childhood lived with him, and for years had worked the farm for him. It is claimed by the plaintiff that in the year 1869, the old man agreed with Eben to devise to him a particular portion of the land in consideration that Eben would maintain and care for him and his wife, as long as they should each live. The first and leading question in the cause is, whether or not the evidence submitted was sufficient to establish the contract alleged.

The law is well settled, that between parent and child, there can be no recovery for services or maintenance, unless upon proof of an express contract to pay therefor; and to establish such a contract requires the production of direct, clear and positive evidence. This rule is especially applicable to the case of a son who has never left his father's family to do business on his own account, but remains with him after majority as before. When, however, services are rendered by a son to his father upon an alleged parol contract of the father to convey lands to the son, even a stronger degree of proof is required; to establish such a contract the evidence must not only be direct, positive, express, and unambiguous, but the contracting parties must be brought face to face, the witnesses must have heard the bargain when it was made, or must have heard the parties repeat it in each other's presence; a contract is not to be inferred from the declarations of one of the parties only, every presumption is against the claimant in such a case: Ackerman *v.* Fisher, 7 P. F. S., 457; Edwards *v.* Morgan, 4 Out., 330; Miller's Appeal, Id., 568. And the same measure of proof requisite to establish a parol agreement between father and son, to convey land in consideration of services rendered, is required to establish a parol agreement of the father, to compensate the service of his son, by a devise of lands; the latter being in effect but an agreement to convey by will instead of deed. A contract to devise, may in some instances be enforced by decree for specific execution: Brinker *v.* Brinker, 7 Barr, 53; or it may furnish ground for an action, in case of a breach, and the damages will be computed according to the same measure, as if the action were for breach of a contract to convey. The same policy of the law which demands the application of the rule in the case of a parol contract to convey, would seem to demand its application in the enforcement of a parol contract to devise. That the law has heretofore been so understood, appears from the

[Burgess *v.* Burgess.]

language of this court in Miller's Appeal, *supra*, where Mr. Justice TRUNKEY, in defining the degree of proof necessary to establish a promise by a parent, to pay for the service of his child, says: " The degree of proof to establish it, cannot be the same in all cases ; nor is the contract for the payment of money for services, or goods, subject to the same rules, respecting its proof, as are applied to oral contracts for the *conveyance or devise* of land by a father to his son," &c.

In the case at bar, the evidence fails to disclose any express or positive contract, the contracting parties are, at no time, brought face to face ; no witness heard the bargain made, or at any time heard either party repeat it in presence of the other. A will was written it is true, but there is no evidence that Eben ever saw it, or knew of its execution, or that the father and the son had ever agreed upon its terms, or assumed the obligations therein written. The will was, of course, ambulatory ; its provisions were liable to change at the mere pleasure of the testator, unless by contract he had obligated himself otherwise. The contract is therefore not proven by the will, its execution at the time was a fact of a corroboratory character merely, bearing upon the question of the existence of the contract ; but it does not establish it. If the contract to devise had been plainly proved, as an independent fact, a will shown to have been written, in compliance with it, might perhaps have been resorted to, to declare its particular provisions, define boundaries, &c., but the devise alone was not sufficient evidence of a contract to devise ; if produced in evidence it certainly would be entitled to have no more weight than would any other deliberate admission of the testator.

Prior to the execution of this will the testator had consulted with his nephew, Major Uriah Terry, in reference to what arrangement he should make of his property. Uriah Terry says: " He first came to me in 1869 with a deed to witness, and I refused to do it, and I told him he didn't know in whose hands he might fall, and to keep the property in his own name while he lived. I would not witness the deed. He did not execute it. The property at first had been divided, east and west, to make it equal between the two oldest sons ; he was going to deed it east and west. Well, he came to me and told me what he proposed doing. That he was going to give Eben the centre of farm, and give Jonathan the east side of the road as we pass down the river, and fifty acres on the back end of the farm, and the balance of the property to Eben. Eben was to take care of him and his wife during their lives, and provide for them and take all the care and everything of it, and then he was to have the property."

The witnesses to the will state, in substance, that they were

called upon in 1869 to attest its execution. The old man read the will in their hearing. Eben, according to its provisions, was, at the death of his father, to have the farm on the west side of the road, excepting the fifty acres on the back end of the farm, and was to support his father and mother as long as they lived.

After the execution of the will, and until the time of his death, Eben carried on the work of the farm, as he had done before, his father taking no apparent control or management in its affairs. He built a barn worth from $750 to $1,000, taking part of the material from the land; he had the land assessed in his own name and paid the taxes; he ditched the land and otherwise improved it; he supported and cared for his father and mother; gave them credit at the store, and paid the bills.

On the next Sunday after Eben's death, in August, 1875, Uriah Terry was helping the father, George Terry, to turn Eben's cattle into the field; "The old man," says Uriah, "was very much affected, and he said, 'I have got to be an old worn out man, and I don't know what I shall do. I want to do justice between all my grandchildren, and what disposition to make I don't know.' He talked about it, and said, 'if they were old enough to carry out the provisions I made with their father . . . . .' And I said, 'perhaps the administrator would do it;' and so he talked about it in that way, and let it drop." "He said then, 'I never expected to have any of this thing come into my hands again, Eben was to do all these things, and he did it to my satisfaction,' and he cried considerably."

This is the substance of the testimony relied upon to prove the contract. From such facts and circumstances, in a case where the relation of parent and child did not exist, we might readily infer a contract, in accordance with the provisions of the will; but the existence of any such contract can only be inferred, it is not directly proven. At no time have the contracting parties been brought face to face, in the creation of a contract or in the rehearsal of it, in the presence of a witness. The admissions on the one side are of the father only, in the absence of the son; whilst the acts of the son, on the other, furnish evidence of a circumstantial character only. The care and improvement of the farm, the building of the barn, and the exercise of exclusive control, may all be attributed to the intimate relation and condition of the parties; and the kind and generous support furnished to the parents, to the natural affection and dutiful care of the son. For anything that is shown, Eben G. Terry at any time might have removed from the place, leaving his father to shift for himself without rendering himself liable for so doing. He has said nothing,

[Mason v. Rogers.]

has done nothing, which could be construed into a contract to support his father and mother, beyond the period of his pleasure.

After a careful investigation of the whole case, we are of opinion that the evidence of the contract alleged is not of that direct, positive, express, and unambiguous character, which justified a submission to the jury. Such claims are so often made against the estate of decedents, and, under the ordinary rules of evidence, are so easily proven, that they must be examined with the closest scrutiny. "The danger attendant upon the assertion of such claims requires," as was said by Chief Justice GIBSON, in reference to a somewhat similar contract, that "a tight rein should be held over them, by making the quality, if not the sum, of the proof a subject of inspection and governance by the court, and by holding juries strictly to the rule prescribed."

The view which we have taken of this branch of the case, renders it unnecessary, we think, to consider the other errors assigned.

The judgment is reversed.

Chief Justice MERCUR dissented.