## Reuben Kuhns's Estate.   Julia A. Kuhns's Appeal.

*Assignment of expectancy—Equity.*

A sale or assignment of an expectant interest in the estate of a living parent will be sustained in equity where the assignment has been made in good faith and for a valuable consideration.

*Evidence—Competency of witness—Assignment of expectancy—Act of May* 23, 1887, *section* 5, *clause* e, *P. L.* 158.

Where an assignor has assigned his expectancy in the estate of his living parent, and after the death of the parent the interest has been attached by a creditor who afterwards dies, both the assignor and the assignee are competent witnesses to show that the assignment was made in good faith, and for an adequate consideration.

Argued Jan. 31, 1894.   Appeal, No. 131, Jan. T., 1894, from decree of O. C. Lehigh Co., distributing decedent's estate.   Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Exceptions to auditor's report.   Before ALBRIGHT, P. J.

From the report of the auditor, A. G. Dewalt, Esq., it appeared that on Feb. 22, 1890, Franklin R. Kuhns assigned to Julia Ann Kuhns, his sister, all the right, title and interest he then had, or might thereafter have, in the estate of his father, Reuben Kuhns, which assignment was recorded one day after the death of Reuben Kuhns.   On June 9, 1890, Reuben Kuhns died.

On Feb. 22, 1890, Franklin R. Kuhns was insolvent, and a judgment of the Second National Bank to the use of James Newhard was due and owing by him.   On Oct. 10, 1890, the

Second National Bank, to the use of James Newhard, issued an attachment execution based upon judgment No. 79, April Term, 1885, against Franklin R. Kuhns and James Newhard, defendants, and Aaron Kuhns, executor of Reuben Kuhns, garnishee. James Newhard died April 5, 1892, and his executors were substituted. On May 14, 1892, Aaron Kuhns, the executor, paid to Julia Ann Kuhns, as assignee of Franklin R. Kuhns, $538.92, the full share of Franklin R. Kuhns in his father's estate.

The auditor found that Franklin R. Kuhns and Julia Ann Kuhns were both incompetent to prove the consideration for the assignment of the expectancy. He accordingly awarded the fund to the attaching creditor.

Exceptions dismissed and report confirmed.

*Errors assigned* were dismissal of exception and entry of decree, quoting them.

*Marcus C. L. Kline*, for appellant.—Contingent interests and expectancies may be assigned by the expectant heir, devisee or legatee in the lifetime of decedent, and equity will uphold such assignments as against other claimants or attaching creditors of the assignor if the consideration be proved: Bayler v. Com., 40 Pa. 37; Power's Ap., 63 Pa. 443; East Lewisburg Lumber and Mfg. Co. v. Marsh et al., 91 Pa. 96; Ruple v. Bindley, 91 Pa. 296; Patterson v. Caldwell, 124 Pa. 455; Whelen v. Phillips, 151 Pa. 322; Davidson v. Little, 22 Pa. 245; Story's Eq. Juris. §§ 1040–1055; Field v. Mayor, etc., 2 Selden, (6 N. Y.) 179.

Both assignor and assignee were competent witnesses: Karns v. Tanner, 66 Pa. 297; Pattison v. Armstrong, 74 Pa. 476; Craig v. Brendel, 69 Pa. 153; Waltman v. Herdic, 90 Pa. 459; McFerren v. Iron Co., 76 Pa. 187; Jordan & Potter's Ap., 107 Pa. 75; Dickson v. McGraw, 151 Pa. 98; Wolf v. Carothers, 3 S. & R. 240; Act of May 23, 1887, P. L. 158; Tarr v. Robinson, 158 Pa. 60.

*John Rupp, E. H. Stine* with him, for appellees.—An heir, or expectant devisee or legatee may, in the lifetime of the testator or intestate, sell or assign his expectant or contingent interest, and if the contract be founded upon a valuable and

sufficient consideration, equity will enforce it: Power's Ap.,
63 Pa. 443; Collins's Ap., 107 Pa. 590; Jordan v. McClure,
85 Pa. 495; Whelen v. Phillips, 151 Pa. 312; Bayler v..Com.,
40 Pa. 37.

An assignment of a mere expectancy is void at law, but may
be enforced in a court of equity when founded upon a sufficient
consideration, and not made for the purpose of hindering, de-
laying and defrauding creditors of the assignor. The burden
is therefore upon the assignee to show that the assignment is
founded upon a sufficient consideration, is free from fraud, and
such as a chancellor would enforce in a court of equity.

Julia Kuhns and Franklin R. Kuhns were not competent
witnesses for the purposes for which they were called: Act of
May 23, 1887, § 5, clause e, P. L. 158. The interest of Julia
is adverse to Newhard. Franklin was an adverse party on the
record. He could not have shown that the judgment was paid
to Newhard during his life. Being incompetent for one pur-
pose, he is incompetent for all.    .

OPINION BY MR. JUSTICE WILLIAMS, October 1, 1894:    .
    This appeal comes from the orphans' court, but it grows out
of a controversy between an attaching creditor of Franklin R.
Kuhns and an assignee of his interest as a residuary legatee
under his father's last will and testament. The important
facts are that Franklin R. Kuhns assigned his expectant inter-
est in his father's estate to his sister Julia Ann Kuhns in
February, 1890. The father died in June, 1890. In October
of the same year a judgment creditor of Franklin R. Kuhns
issued an attachment execution against him on a judgment
obtained in 1885, and seized his interest in his father's estate.
If the assignment is valid, the attachment is too late. If not
valid, then the creditor is entitled to the fund to the extent of
his just demand upon it. Two questions were considered by
the learned auditor and the court below. First, can a valid
assignment of an expectancy be made? Second, if so, was
the assignment made in this case a valid one? The conclu-
sion reached in the court below upon the first of these ques-
tions was clearly right. At law a valid transfer can be made
of anything in actual existence. What the assignor has he
may dispose of. What he has not, although he may hope or

expect to acquire it, he can make no title to because he has no title himself. But such sales and assignments have been sustained in courts of equity whenever good conscience seemed to require it, and not otherwise : East Lewisburg Lumber and Manufacturing Company v. Marsh et al., 91 Pa. 96; Patterson v. Caldwell et al., 124 Pa. 455. If the consideration for such an assignment is a fair and honest one, the assignment will be treated as an agreement to transfer when the assignee's title accrues, and it will be held to take effect as an assignment when the expectant interest vests in the assignor. The second question affords the only real ground for controversy in this case. Was the assignment to Julia Ann Kuhns good in equity? This must depend on the bona fides of the transfer and the adequacy of the consideration.

The proof on these subjects depends on the testimony of the assignor and the assignee. The learned auditor excluded both these witnesses as incompetent to testify, and then held the assignment invalid for want of proof of consideration. This appeal is thus seen to depend on the competency of these witnesses. The auditor and the learned judge of the court below placed the incompetency of these witnesses on section 5 of the act of May 23, 1887. The persons excluded by this clause are the surviving and remaining parties to a thing or contract in action where the other party to such thing or contract is dead, or has become a lunatic, and the interest of the decedent or lunatic has passed by his own act or the act of the law to a party on the record. In such case the surviving party and "any other person whose interest shall be adverse to that of the deceased or lunatic party is declared to be incompetent to testify to any matter occurring before the death of said party or the adjudication of his lunacy."

Does this clause include Julia or Franklin R. Kuhns? It should be noticed that this question did not arise upon the trial of the cause between Newhard, or the bank, and Franklin R. Kuhns, but upon execution process issued upon a judgment obtained when all the parties were living and sui juris. It should be noticed in the next place that the question trying was the title of F. R. Kuhns to property seized in execution which the plaintiff alleged belonged to him. The thing in action was the legacy seized. Newhard was never a party to that. It came to the

defendant under his father's will, and Julia Ann Kuhns alleged that she had become the owner of it some eight months before the execution issued. The contract under examination was that under which she claimed title. Both parties to this contract were living and both were offered as witnesses. Newhard was simply a creditor of F. R. Kuhns who had seized property alleged to be his. Julia Ann Kuhns was a claimant of the property seized asserting her title against her brother's creditor. If the property seized had been a horse instead of a legacy, would the mouth of the purchaser have been closed by the act of 1887 because her vendor's creditor had died after levy made upon the horse? To state this question is to answer it. Under the sheriff's interpleader act the issue would have been made up between the creditor and claimant. The claimant and the defendant would have been competent witnesses and their competency would not have been affected by the death of the creditor except as to matters transpiring between the claimant and the creditor, that might come under investigation. In this case the title to the thing seized was derived through an independent channel with which Newhard had no connection. The contract, the good faith of which it was necessary to establish, was a contract to which the creditor was a stranger, and both parties to which were living; and the adverse interest existing was simply that which grows out of the mere pendency of litigation. The creditor seized, and was interested to hold, the legacy as the property of his debtor. The claimant set up a title under an assignment before the death of the father and when the interest of the assignor was a mere expectancy. The question therefore was over the honesty of the transaction and the sufficiency of the consideration, as between herself and her brother. Upon this question both of them were competent.

The decree of the orphans' court is reversed and the record remitted for further proceedings. The cost of this appeal to be paid by the appellee.