## Ressler's Estate

*George M. Miller, Jr.,* for accountant.

*Albert B. Maris* and *C. Laurence Cushmore, Jr.,* for claimant under assignment.

*Ernest N. Votaw* and *Joseph G. Magee, Jr.,* contra.

SINKLER, J., March 31, 1933.—Sarah A. Ressler died November 9, 1931, unmarried and without issue, leaving a will duly probated, whereby, after directing the payment of her debts and funeral expenses, and after making a number of specific and pecuniary bequests, she gave the residue of the estate to her executor in trust to apply the same to such person or persons or charities as she may direct in a memorandum which she intends to place with her last will and testament, and in case she fails to leave such a memorandum, she authorized and directed her executor to pay the residue to such charity or charities as he may in his best judgment think would be pleasing to her late husband, John Ressler, and herself. . . .

The question for determination by the auditing judge is whether the balance for distribution shown by the account is distributable in accordance with the will and codicil of the decedent, or whether it should be awarded to the Indigent Widows' and Single Women's Society of Philadelphia by reason of an assignment made by her on December 8, 1925, after the execution of the will and codicil.

On December 8, 1925, the decedent entered the home maintained by the claimant. Before doing so she was required to pay an entrance fee of $600. In addition to this amount she paid to the institution $300, and upon this amount, in accordance with the established practice of the society at the time of her admission, she was paid by the society during her lifetime interest at the rate of four per cent. On December 8, 1925, the date of her admission, she executed the following documents:

### "No. 446

"I, Sarah A. Ressler, in consideration of being admitted into the Asylum of The Indigent Widows' and Single Women's Society of Philadelphia, and my support therein during the period I may remain there, do hereby grant, bargain and sell to the said Corporation, for its own use, its successors and assigns, all my Estate, both Real and Personal, now belonging to me, or which I may

hereafter acquire. I further irrevocably Constitute and appoint The Indigent Widows' and Single Women's Society of Philadelphia, my true and lawful Attorney-in-Fact, to grant, bargain and sell to any person or persons, their Heirs, Executors, Administrators or Assigns, all or any part of such Estate, both Real and Personal.

"I agree that I will Comply with all the Rules and Regulations of the said Institution, now made, or which hereafter may be made. I also agree that my Continuance in the Asylum is contingent upon good behavior, and that the Managers may, at any time, dismiss me from the Institution, should they deem it necessary to do so.

"In witness whereof, I have hereunto set my hand and seal, the 8th day of December, Anno Domini, 1925.

"[Signed]  SARAH A. RESSLER   (Seal)

"[Signed]  MARY L. R. BUTCHER
                DAVID T. WILLIAMS

"Personally appeared before me, a Notary Public of the Commonwealth of Pennsylvania, residing in the City of Philadelphia, the above named Sarah A. Ressler, who acknowledged this to be her own act and deed, and desires same to be recorded as such.

"[Signed]  DAVID T. WILLIAMS,<br>"Notary Public,

"Certified copy                    My commission expires March 7th, 1929.
"GUSTAV H. SEELAUS
"(Seal)    For Secretary."

"State of Pennsylvania, County of Philadelphia, ss.

"On this 8th day of December A. D. 1925 before the subscriber, a Notary Public for the State and county above named, personally appeared Sarah A. Ressler who, being duly affirmed, did declare and say that the answers to the following questions put to her on behalf of the Indigent Widows' and Single Women's Society, of Philadelphia, are correct and true, and that she has not omitted to state any material facts that may be of benefit to the said society.

"Do you own any real estate, improved or unimproved, ground rents, or mortgages on real estate? No.

"Do you own any stocks, loans, or shares in Building or other Associations? No.

"Have you any money on deposit in any bank, banking firm, or savings institution or any Trust Company, either on pass book or certificate of deposit? No.

"Have you any insurance on your life, annuity payable to you, or pension from United States? No.

"Is there any other valuable possession not mentioned above, or which you may hereafter become possessed of by the death of the present holder, either lands, money, or securities, such as shares of stock, bond, etc.? No.

"What amount of money have you now in your possession? None.

"Have you any right of interment in any cemetery; if so, what is the name, where situate and number of lot? Who holds the deed for the lot? Ardsley Burial Park, above Glenside. Deed is in possession of Undertaker Schuyler, (Broad and Diamond Sts. Phila.). Burial expenses are paid to Mr. Schuyler.

"[Sgd.]  SARAH A. RESSLER<br>"Signature of Applicant."

"Affirmed and subscribed before me, the day and year above written.
"Witness my hand and notarial seal.

"[Signed]  DAVID T. WILLIAMS.<br>"(Seal)   My Commission expires March 7th, 1929.

The testimony of an officer of the home was taken at the audit. On February 15, 1933, there was filed and will be annexed hereto a stipulation of facts. The first three numbered paragraphs are substantially set forth hereinabove. The fourth paragraph shows the average per diem per capita cost of those residing in the home during the period that the decedent there resided. The aggregate amount for an individual during that time is $2675.50.

Paragraph five contains the third and fourth by-laws of the society to the effect that those who have property are required to transfer it to the institution before they are admitted, but should they obtain property after their admission, if they remain in the institution, it was also to be transferred to it; that each applicant for admission must have reached the age of sixty-five years, and that the entrance fee is $600.

The sixth paragraph stipulates that at the time of her death the decedent was possessed of the following personal estate: $500 bond, West Philadelphia Passenger Railway Company; pair diamond earrings; three-stone diamond ring; two-stone diamond bar pin; $500 bond, Fourth Liberty Loan; five $100 bonds, Fourth Liberty Loan; and that there was in addition due her income from the estate of her mother, Mary Golcher, deceased, amounting to $136.93, and cash on deposit in the First National Bank of Philadelphia, $1111.01; that all of these items are still in the hands of the executor; that the accrued income from the estate of Mary Golcher, deceased, has been paid him, and that there remains in his hands a balance of cash, including the income from this estate, of $332.45, likewise $29.88, the accrued interest on Liberty Bonds and the West Philadelphia Passenger Railway Company bond. The stipulation proceeds that, so far as can be discovered, the West Philadelphia Passenger Railway Company bond, the earrings and the pin were owned by the decedent at the time she entered the home, and that the Liberty Bonds were purchased by her thereafter, on or about October 20, 1931. It concludes that at the time of her entry into the home decedent had a life interest in one-half of the residue of the estate of Mary Golcher, by reason of which she received from time to time, between May 4, 1926, and August 28, 1931, a total of $1419.91. Annexed to the stipulation is a copy of the document dated December 8, 1925, and affidavit, set forth above in this adjudication.

In behalf of Albert Klingemeier, who receives a legacy of $500 under the will of the decedent, a brief has been filed. It is therein contended that the document executed by the decedent December 8, 1925, was not effective to transfer to the home any part of the estate now accounted for. It is argued that the document in question is no more than an agreement to make a gift, citing Packer et al., Exec'rs, v. Clemson, 269 Pa. 1. It is contended that a valid gift inter vivos exists only where there is a clear, satisfactory and unmistakable intention of the giver to part with and surrender dominion over the subject of the gift, with an intention to invest the donee with the right of disposition beyond recall, accompanied by an irrevocable delivery, actual or constructive. It is further argued that the claimant is here asking for specific performance of an unexecuted gift, and that this a court of equity cannot do, citing Allshouse's Estate, 304 Pa. 481.

The second ground of argument is that though the agreement is a contract to assign and not a gift, the claimant has not shown any damages, citing Graham v. Graham's Exec'rs, 34 Pa. 475, Hertzog v. Hertzog's Admin'r, 34 Pa. 418, Burgess, Admin'r, v. Burgess, Admin'r, 109 Pa. 312, Goehring's Estate, 70 Pa. Superior Ct. 340, and Breniman v. Breniman et al., Exec'rs, 281 Pa. 304.

In behalf of the claimant it is argued that the document executed by the decedent upon entering the home is a sufficiently executed assignment of all property she might own or thereafter acquire, and the only objection to the claim here presented would be based upon the invalidity of the instrument for some

legal reason. A number of cases are cited in support of the legal proposition that an assignment of personal property for a valuable consideration unaccompanied by possession, although void as to creditors, is binding upon the assignor. An analogous case is Lewis's Estate, 139 Pa. 640, where it was held that an assignment without transfer of possession, although it might be void as to the assignor's creditors, was binding after her death upon her heirs. The law relating to this case is correctly cited by the claimant. It is likewise the law of this state that, generally speaking, the assignment of after-acquired property is, if for a sufficient consideration, valid: Bispham's Principles of Equity (10th ed.), 279, Sec. 165. The principle is firmly established that assignments of choses in action, possibilities, expectancies, things not in esse, and mere contingencies will be enforced, whenever such assignments are based on a valuable consideration or have assumed such a shape that the assignor has constituted himself a trustee for the assignee: Bispham's Principles of Equity (10th ed.), 278, Sec. 164, citing Kuhns's Estate, 163 Pa. 438, and Lennig's Estate, 182 Pa. 485, 496.

The document executed by the decedent December 8, 1925, is described by the legatee as a contract to make a gift or to make an assignment, and by the claimant as an assignment. It is in effect a bill of sale of personal property and possibly a deed of conveyance, for by its terms it grants, bargains and sells to the claimant for its own use, its successors and assigns all of the decedent's estate, real and personal, now belonging to her or which she may thereafter acquire. It then appoints the claimant her true and lawful attorney to grant, bargain and sell to any person or persons, their heirs, executors, administrators and assigns, all or any part of such estate, both real and personal, and contains a covenant that she will comply with all the rules and regulations of the institution now made or which will hereafter be made. The document is under seal, witnessed by two witnesses and acknowledged before a notary public.

It is argued in behalf of the legatee that the consideration for the admission of the decedent into the home conducted by the claimant is the payment of the $600 entrance fee. But an additional consideration is the execution of the bill of sale and her agreement to comply with the by-laws, which include the one we have cited respecting the assignment to the claimant of all property thereafter acquired by her. The legatee contends that no part of the property assigned was actually transferred to the possession of the claimant, and to this the claimant apparently assents. At the time of the execution of the assignment, the decedent, in addition to the payment of the entrance fee as a condition precedent to her entrance to the home, paid over to the claimant an additional sum of $300 at or about the time of the execution of the assignment. Thus there was a substantial sum paid to the claimant although it was not part of the property included in the assignment.

The determination of the auditing judge is that the instrument dated December 8, 1925, is legally valid and effective to vest in the claimant the balance in the hands of the accountant for distribution.

Neither of the parties claiming the fund has cited any decision of any court in this state similar to the present one, that is, the assignment by a decedent or of a living person of all of his property as part consideration for his admission to an institution.

The claimant cites a closely analogous case in New Jersey, Fidelity Union Trust Co. v. Reeves et al., 96 N. J. Eq. 490, affirmed by the New Jersey Court of Errors and Appeals in 98 N. J. Eq. 412. There the decedent had entered an institution for elderly ladies and as a consideration executed an agreement to assign any pension or other property, real or personal, of which she might then be seized or possessed or might thereafter acquire. After living for several

years in the institution she received an inheritance of $30,000, and subsequently died intestate. Her next of kin claimed her estate, contending that the contract of assignment to the institution was void as against public policy. They relied upon the case of Baltimore Humane Impartial Society and Aged Women's and Aged Men's Homes *v.* Pierce et al., 100 Md. 520, in which the court had refused to enforce a somewhat similar contract on the ground that it was against public policy. In the Maryland case, upon receiving the inheritance the inmate had withdrawn from the institution, which then brought an unsuccessful action at law to enforce his contract liability. The decision of the New Jersey court distinguished the case before it from the Maryland case, since an assignment of an expectancy was not enforceable by law in that state. The New Jersey case noted the further distinction that in its case the inmate had died, whereas in the Maryland case the inmate had withdrawn and would have been left penniless had the contract been enforced. The decision of the New Jersey court discusses the subject of public policy and holds that public welfare is to be served by upholding contracts of this character whereby institutions for the care of the aged relieve the public of their charge. The opinion of the court concludes that the home having secured the inmate against the poorhouse, against becoming a public charge, and that public interest thereby being protected and served, there is no invasion of the policy of the law.

So far as public policy is concerned, the auditing judge agrees with the reasoning of the New Jersey court, and he finds nothing in the assignment made by the decedent in the present case that violates public policy.

If the question of damages sustained by the claimant entered into the present case, it appears that the per diem per capita cost of the institution during the time she was an inmate there is approximately the same as the amount paid by her during her lifetime, together with the balance now in the hands of the accountant. In reaching our conclusion the court effects substantial equity between the parties.

NOTE.—No exceptions were filed to the foregoing adjudication, which therefore became final as of course, under the rules of the orphans' court.