## Smith v. Philadelphia-Fidelity Trust Co. et al.

*F. J. Walsh*, for plaintiff.

*G. W. McKeag* and *McDevitt, Phillips & Farran*, for defendants.

BOK, P. J., November 18, 1947.—On August 26, 1913, Charles K. Smith, a man of wealth and of advanced years, entered into an antenuptial agreement with his intended bride, Elizabeth G. Hope, then a widow, 30 years of age. This agreement provided that Charles K. Smith should set aside, on his death, unto the Fidelity Trust Company as trustee, securities of the value of $50,000. The income was to be paid to Elizabeth G. Hope for her life or until her remarriage, and at her death the principal was to go to the executors and trustees of the will of Charles K. Smith, to be disposed of as part of his residuary estate and according to his will.

Charles K. Smith and Elizabeth G. Hope married on August 27, 1913. He made his last will on April 9, 1915, and died on October 12, 1916. Letters testamentary were granted October 19, 1916, to four executors, of whom Mrs. Smith was one.

The adjudication on the account of the executors was filed on December 31, 1917, by Judge Gest of the Orphans' Court of Philadelphia County. Mrs. Smith, decedent's widow and one of the coexecutors, was represented by counsel in both her individual and fiduciary capacity at the audit.

One of the questions that were adjudicated by the orphans' court in the adjudication filed December 31, 1917, and confirmed absolutely on or about January 14, 1918, was whether or not Mrs. Smith had elected to take under the will. Judge Gest said about this:

"In the twentieth item of his will the testator refers to his antenuptial agreement with his wife by which she waived and released all further claim on his estate. It was stated in the petition for distribution that the widow had elected to take under the will, but it seems that no formal election has been filed under the act of assembly. Inasmuch, however, as the widow has waived her rights in the estate, it seems to the Auditing Judge immaterial whether she filed her election or not."

Notwithstanding this adjudication, Mrs. Smith, on January 14, 1918, executed, filed, and caused to be recorded a formal election to take under the will.

There were no exceptions taken to the adjudication and there was no appeal.

Mrs. Smith, alleging fraud by her husband and counsel, now seeks to set aside the antenuptial agreement and to set aside the election to take under the will.

Defendants, who are the trustees under the antenuptial agreement and the executors and trustees under the will, have filed preliminary objections, which must be sustained.

We are satisfied that jurisdiction of such a case as this is properly in the orphans' court rather than here. It concerns property that was in decedent's possession when he died. It is true that the property listed in the agreement was earmarked for the purposes of the

trust, but decedent nonetheless died in possession of it, and once he was dead, his executors had to see to it that the agreement was fulfilled and the securities set aside to the trustee: the will mentions the agreement in order to explain why plaintiff received no testamentary share, and upon the existence and validity of the agreement depended the question of the widow's share in the estate.

The orphans' court's jurisdiction over the settlement and distribution of decedents' estates is exclusive, and the touchstone of jurisdiction is whether or not the property in question was actually or presumptively in decedent's possession when he died, or whether thereafter it came into the possession of his personal representative as part of the estate for the purpose of administration and distribution: Crisswell's Estate, 334 Pa. 266 (1939) ; Thomas et al. v. Johnson et al., 356 Pa. 570 (1947). See also Cutler's Estate, 225 Pa. 167 (1909) ; Mains' Estate, 322 Pa. 243 (1936), and McGovern's Estate, 322 Pa. 379 (1936).

Under the terms of the agreement, Mrs. Smith was to have only a life interest; at her death or remarriage the corpus was to return to the executors for final disposition under the terms of the will. It cannot be said, therefore, that this property is so outside the estate as to escape the jurisdiction of the orphans' court.

Plaintiff asserts that she is not attacking the will but only the antenuptial agreement. Granted arguendo that she could do so here, we fail to see what claim she would have to the corpus of $50,000 if she were successful. It never was her money. She says in her brief that she is a "creditor" of the estate in that amount because her husband showed her a will, at the time the agreement was signed, wherein he left her $50,000 outright; she claims this sum because it was the inducement of her signing. We fail to see the connection. Even if there were one, she would have to sustain the proposition that her husband had no right

to change his will—a typical orphans' court question. Nor could she limit her claim to the $50,000 even if she wanted to, for the corpus of the agreement would hang in midair unless it went back into the estate, once the agreement was eliminated as fraudulent. She would be in the position of a widow who had been defrauded of her just legal rights in the estate, and her only claim would be against the estate for her full intestate's share.

Plaintiff cannot avoid blowing both hot and cold. She wants to leave the estate unopened in order to have the advantage of Judge Gest's finding that her election to take under the will was an immaterial thing. Yet by asserting herself to be a "creditor", in order to lay some basis for a claim to $50,000, she must necessarily open the estate in order to benefit from the claim.

Plaintiff cites Burgess v. Burgess, 109 Pa. 312 (1885), and Snyder v. McGill, 265 Pa. 122 (1919), in support of our jurisdiction. These are both cases in which an estate was sued on alleged contracts—the first, a contract to devise real estate, and the second, a contract for personal services. Plaintiff, however, is not suing to enforce a contract but to break one; the nature of her claim is not that of a creditor anyway, but of a distributee, since the claim, if substantiated, would directly affect the distribution of the estate. If an advancement is within the orphans' court's exclusive jurisdiction, as was held in Long's Estate, 254 Pa. 370 (1916), we think that the instant situation is also. Certainly the orphans' court has power to determine all questions essential to a proper distribution: Slagle's Estate, 335 Pa. 552 (1939); Real Estate Savings and Trust Co. v. Lewis, 340 Pa. 86 (1940).

We conclude that we have no jurisdiction. The other questions raised by defendants are subsidiary.

The preliminary objections are accordingly sustained and the bill is dismissed.