## Malusis Estate

*Herman B. Shepard*, for petitioner.

*John R. Verbalis*, for respondent.

BRADY, P. J., (forty-fifth judicial district, specially presiding), August 24, 1951.—The matter before the court is on a rule to show cause why an award of inquest in partition should not be vacated or stayed. On the petition of Joseph Malusis, the rule was granted upon John, Peter and Michael Malusis, Ann Sobers and Mary Daylida; the six aforenamed parties are the children of Anna Malusis, decedent.

The matter was heard on the petition and answer to the rule. The facts appear from the record and pleadings on the rule.

### Facts

1. Anna Malusis, a widow and mother of six adult children, died testate July 29, 1949, a resident of this county.

2. Her will, dated January 15, 1947, was duly probated on September 8, 1949. Under the provisions of her will testatrix devised the real property, the subject matter of the proceedings in partition now under consideration.

3. The real estate, comprising two adjoining parcels, was owned by decedent as estates in severalty at her death. One parcel, known as 40-42 North Landon Avenue, Borough of Kingston, this county, she devised to her son, Joseph Malusis, a respondent in the partition proceedings and petitioner for the instant rule; the adjoining parcel, known as 44 North Landon Avenue, she devised to her son, Michael Malusis, petitioner for the partition and a respondent on the rule.

4. The parties who were averred in the petition for inquest as having the present interests in the lands are petitioner, Michael Malusis, and respondents, his five brothers and sisters, being the six children of Anna Malusis, decedent; the children, namely, Michael,

Joseph, Peter and John Malusis, Ann Sobers and Mary Daylida, were averred to have each an undivided one-sixth interest in the two properties.

5. The aforenamed adult children prior to their mother's death executed a written agreement under date of April 26, 1949, wherein was recited that the signers knew the provisions of their mother's will as executed; that their mother since had become mentally ill and a guardian for her estate had been appointed; that the mother was incompetent to revoke the aforementioned will; that there had been disputes and unhappy differences between the mother and certain of her children since the death of the father in 1936, and further recited and agreed:

"And whereas, the signers of this agreement understand the present wish and desire of their mother is to make a more equitable division of her property at the time of her death,

"Now Therefore, to better carry out the wish, desire and intention of their mother, the signers of this agreement, in consideration of their mutual love and affection to each other and in further consideration of One ($1.00) Dollar to each in hand paid by each other, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the signers of this agreement, in full knowledge and possession of the fact that Michael Malusis and Joseph Malusis are the devisees of the property located on N. Landon Street, Kingston, under the last will and testament of their mother, Anna Malusis, and with the further understanding that certain of the other children are to receive cash legacies and the personal property of their mother; all the owners, together with their spouses, Do Hereby Covenant and Agree with each other that all the real property that their mother will give, devise and bequeath to them upon her death is and will be released, surrendered, and then divided

equally amongst all the children of Anna Malusis, to wit, John Malusis, Joseph Malusis, Annie Malusis Sobers, Peter Malusis, Mary Malusis Daylida and Michael Malusis, share and share alike."

The agreement further provided for distribution of personal property of the mother. It was purportedly signed and sealed by all the children and the spouse of each who was married, and the execution acknowledged before a notary by the parties, Joseph Malusis, his wife, Regina Malusis; Michael Malusis, Annie Malusis Sobers and Frank Sobers, her husband, under date of April 26, 1949.

6. The aforesaid agreement was filed in the office of the Register of Wills of this county, on February 8, 1950, following the probate of the will of Anna Malusis, decedent.

7. The matter of the agreement, its execution and filing, the provisions of the will and the probate thereof were incorporated in the petition for inquest. A citation was awarded July 12, 1950, directed to the five brothers and sisters of petitioner, Michael Malusis, to show cause why an inquest should not be granted.

8. Respondent, Joseph Malusis, filed an answer to the petition, denying the present interests in the properties as averred in the petition, and set forth under the will of his mother he owned one property and petitioner, Michael Malusis, owned the other property. He further averred that the agreement of the children was of no force or legal effect because it was "not supported by any legal consideration and therefore has no legal force and effect". He did not deny his execution of the agreement, but denied that his wife executed the agreement and averred that her signature was a forgery and her acknowledgment thereof was false. He further averred that all parties were not joined in the proceedings, specifically, his wife, Regina.

9. The matter raised in the answer was argued as preliminary objections, resulting in an order, filed September 27, 1950, by Hourigan, P. J., directing "that the petition for citation filed July 12, 1950; be amended so as to include Regina Malusis".

10. In accordance with the aforesaid order, the petition was amended to include Regina Malusis as an additional party to the proceedings and service of the amended petition and citation was made upon her through acceptance of service by her counsel on November 14, 1950.

11. On November 15, 1950, an inquest in partition was awarded by the court, returnable December 13, 1950, by Hourigan, P. J., on the petition and motion of John R. Verbalis, attorney for petitioners for inquest. The petition set forth, inter alia: "3. That no further objection has been made to an award of an inquest by your honorable court and no objection remains of record undisposed of at this time."

12. On December 7, 1950, Joseph Malusis filed a petition to stay the inquest in partition now under consideration.

13. In substance, the petition to stay sets forth as cause: That the award of inquest was premature and without proper notice to petitioner that the questions raised in the pleadings in partition, i. e., the legal force or effect of the agreement, without sufficient consideration, and the dispute of interests in the lands, had not been determined or ruled upon by the court.

14. In answer to the rule, it is averred that all objections or reasons pleaded against the partition of the lands were withdrawn or waived by counsel for Joseph Malusis on the argument heard on the petition for inquest and answer thereto on September 27, 1950, providing that Regina Malusis be named as an additional party to the proceedings.

15. Disposition of the matter may be made without additional findings pertinent to questions concerning the power of attorneys during trial, dispute of title in partition cases and procedure thereon, and stipulations or agreements of counsel in open court.

## Opinion

A review of the record in the partition proceedings granting the award of inquest in this case and the pleadings on the rule to vacate or stay the inquest now before the court reveals that no party directed attention to a question of the court's jurisdictional power, vital to the whole proceeding. If jurisdiction be lacking, any action, declaration or present opinion regarding the disputed interests of the parties in the real estate would be extrajudicial. Were the proceedings and orders of the court preceding the rule to show cause why the inquest should not be stayed or vacated coram non judice? Has the court jurisdictional power in this partition case, on the facts averred in the petition for an inquest?

The two parcels of real estate in respect to which application for partition was made had been owned as estates in severalty by Anna Malusis at the time of her death, July 29, 1949. In her will, duly probated September 8, 1949, she devised one parcel as an estate in severalty to her son, Michael Malusis, petitioner for inquest; the second parcel she devised as an estate in severalty to her son, Joseph Malusis, a respondent and petitioner for the instant rule to stay the inquest.

The petition set forth the provisions of the will devising the parcels in severalty and further averred and incorporated the agreement of the children executed prior to the death of testatrix. This agreement was purportedly signed and sealed by all six adult children and the spouses of those who were married. It carried a notarial acknowledgment of execution of

Joseph Malusis, his wife, Regina, and Michael Malusis, under date of April 26, 1949. The provisions, inter alia, of the agreement set forth in the findings of fact herein, read that all signers "covenant and agree with each other that all the real property that their mother will give, devise and bequeath to them upon her death is and will be released, surrendered, and then divided equally amongst all the children of Anna Malusis . . . share and share alike." This division was stated in the agreement to be "in consideration of their mutual love and affection to each other and in further consideration of One ($1.00) Dollar to each in hand paid by each other and for other good and valuable consideration". Through this agreement, it is implicated and so averred, each of the six children of Anna Malusis, deceased, have a present undivided one-sixth interest in the same two properties testatrix had devised in severalty, one to her son Joseph, the second to her son Michael. Such averred undivided interests of the six children must have vested in the children through the legal effect of their mutual agreement that they had executed prior to the death of their mother, Anna Malusis. The will of the mother was duly probated, and no agreement of her children as expectant distributees could void the testacy.

The averred undivided interests of the parties in the real estate did not vest through succession, as heirs of their mother, Anna Malusis; nor did the undivided interests of the parties, if any, vest by devise through the testacy of the mother. Whatever undivided interests the parties may have, be such interests legal or equitable or nonexistent, vested by force or legal effect of the expectant distributees' agreement. But vesting of such interests followed instantaneously the vesting of estates in severalty to each of the sons, Joseph and Michael, through the will of their mother. Prior to the death of the mother, the children had no

estates or interests in the properties; all they had were expectancies. The mutual agreement of the expectant distributees and obligees in "binding the expectancies" did not disturb the vacuum of interests prior to the death of the mother.

The theory as to interests of expectant distributees, their obligees and the transferrability of such interests, is discussed in A. L. I. Restatement of the Law of Property, §§315-317. In section 316, comment C, supra, it is stated:

"In many aspects, the rights of the transferee are determined in the same manner they would be under applications of the doctrine of estoppel by deed." See Kuhns' Estate, 163 Pa. 438; Lennig's Estate, 182 Pa. 485; Norris' Estate, 329 Pa. 483.

Joseph Malusis, in answer to the petition for inquest, denied the undivided interests in the properties, and averred that he owned one of the properties and petitioner, Michael Malusis, owned the other property through the will of their mother; and that the agreement of the children was of no effect because "not supported by any legal consideration". He further averred that the signature of his wife, Regina Malusis, on the agreement was a forgery and the notarial acknowledgment thereof false, and that all parties were not joined in the partition.

After argument on the issues raised by the petition for inquest and the answer thereto on September 27, 1940, the petition was ordered amended to include Regina Malusis as a party.

In partition proceedings under the Orphans' Court Act, the spouse or spouses of the parties are not necessary parties since the amendment of section 3 of the act by the Act of April 24, 1929, P. L. 646. But in the instant case, the reason for joining as an additional party Regina Malusis appears to have been as a result of the hearing on the issues raised by the

pleadings held September 27, 1950. In answer to the petition on the rule herein considered, it is averred that all grounds or reasons pleaded against partition were waived or withdrawn and abandoned by Joseph Malusis, through his attorney, at the hearing on the petition for inquest and answer thereto on September 27, 1950, providing that the wife of Joseph Malusis was made a party to the proceedings.

The wife, Regina Malusis, was made a party to the proceedings and service of the amended petition and citation was accepted by her counsel on November 14, 1950. There followed the award of inquest by the court on November 15, 1950, when the attorney for petitioner for inquest presented the petition averring "That no further objection has been made to an award of inquest by your honorable court and no objection remains of record undisposed of at this time."

The grounds or reasons now given why the inquest should be stayed are: That the award was premature and granted without notice to Joseph Malusis; that the disputed interests or ownership of the lands had not been ruled upon by the court; that the court did not determine the legal effect or force of the agreement of the expectant distributees and the question of consideration therein.

In partition cases, where title or interests in the lands are disputed, whether or not the court shall stay the proceedings depends upon the reasons pleaded: Lloyd's Estate, 281 Pa. 379. But in the instant case, whether the disputed title to the lands was settled at the hearing on September 27, 1950, through the attorney for Joseph Malusis waiving, withdrawing or abandoning the pleaded reasons against partition or whether the pleaded reasons were considered insufficient by the hearing chancellor, together with other questions, such as hearing on the merits, oral stipulations and the power of attorneys at trial, proper par-

ties, due notice and procedure, are but mooted questions, if jurisdictional power of the court over this partition cases is not conferred by law.

Does the jurisdiction of the orphans' court extend to all cases in partition? The law has conferred upon this court only limited powers.

"Thus, it is only in certain cases of joint tenure, that it is authorized to make partition. What those cases are, is well defined in the Acts of Assembly which have conferred upon the court its power; and to those acts we must look, rather than to our conceptions of what might be convenient. Unless the power to make partition in a particular case is there found, the court does not possess it": Snyder's Appeal, 36 Pa. 166, 168 (1860). (Different ancestors case. Act of February 26, 1869, P. L. 4, extended jurisdiction of the court to partition lands derived from different ancestors.)

"The jurisdiction of the Orphans' Court to make partition, was originally confined to the estates of intestates; lands held in joint tenancy or in common under *deeds*, wills, or other common-law assurances, being the subject of the jurisdiction of the Court of Common Pleas. The Act of 13th April 1840, Sec. 4, extended the jurisdiction of the Orphans' Court to cases of testacy, where the parties or some of them were minors, or where the course of descent under the intestate law was not altered by the will. This was followed by the Act of 10th April 1849, §10, conferring jurisdiction in cases of testacy, when the estate was in whole or in part devised to two or more children, either in equal or in unequal proportions. To remedy the inconveniences of having first a common-law partition between the heirs of a decedent and his co-tenants, the Act of 13th March 1847, §1, further authorized a valuation in the Orphans' Court of the interest of the decedent in property held in common

or joint tenancy with others. But where lands are held in *severalty by a devisee*, subject only to the common-law right of dower, no jurisdiction has yet been conferred upon the Orphans' Court": Shaffer et al. v. Shaffer et al., 50 Pa. 394, 396 (1865). (Widow's election case. Later Acts of April 20, 1869, P. L. 77, and of May 8, 1899, P. L. 146, conferred jurisdiction in partition on a widow's election.) (Italics supplied.)

All of the various jurisdictional provisions of acts relating to partition in the orphans' court were consolidated in the Orphans' Court Partition Act of June 7, 1917, P. L. 337, sec. 1; further amended by Act of June 24, 1939, P. L. 707, 20 PS §1181. See Note, 20 PS §1181.

Research does not reveal any former act of assembly or decision of our courts construing any act as an extension of the orphans' court's jurisdiction to cases in partition, wherein the averred title of *all* the undivided interests of the parties is derived through a deed or instrument of agreement between living persons.

Under the terms of section 1 of the Orphans' Court Partition Act of June 7, 1917, P. L. 337, as amended, 20 PS §1181, combining the provisions of the various former acts or provisions relating to the jurisdiction of the orphans' court in partition of real estate, there can only be construed an extension of jurisdiction to cases wherein an *undivided interest* in the lands passed or was derived through intestate or testate succession or by act or law on intestacy or testacy, such as the rights of a surviving spouse.

In the instant case, upon the facts averred, no undivided interest in the lands passed by intestate or testate succession. All the averred interests in the lands depend on the legal effect of an agreement between now living persons. In the opinion of the court,

jurisdictional power to partition such interests was never conferred by law on the orphans' court.

The want of jurisdiction in the partition proceeding at bar goes to the foundation of the whole proceedings.

### Decree

Now, August 24, 1951, in accordance with the above findings and ruling, it is ordered and decreed that the whole partition proceedings in orphans' court be quashed and set aside, without prejudice to the right of the parties in interest to proceed in the proper forum, if they see fit.