## Fritz's Estate.   Fritz's Appeal.

[Marked to be reported.]

*Assignment of expectancy—Consideration.*

An assignment of an expectancy may be enforced as an executory agreement to convey, if it be sustained by a sufficient consideration.

The sum of $625 is a sufficient consideration for the assignment of an expectancy in an estate, where the interest in the estate is $771.

*Fraud—Evidence—Assignment.*

An assignment of an expectancy in an estate from a father to a son will be sustained where both father and son testify that the assignment was made in consideration of money furnished by the son, and there is no evidence to impeach the veracity of either witness.

Argued Jan. 29, 1894.   Appeal, No. 410, Jan. T., 1893, by Alfred Fritz, assignee of expectant legacy, from decree of O. C. Lehigh Co., sustaining exceptions to report of auditor distribut-

ing estate of Charles Fritz, deceased. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Adjudication of executor's account.

W. LaMonte Gillette, Esq., was appointed auditor to distribute.

From the testimony it appeared that Charles Fritz died in 1891, leaving a will by which he bequeathed $700 to his son Benjamin, and also made him one of his residuary legatees. The value of Benjamin's share in the residuary estate was $71.47. Prior to the death of Charles, Benjamin had borrowed from his son Alfred various sums of money amounting to $625, and in payment of the same had assigned to Alfred all his estate, right, title and interest which he might thereafter have in the estate of Charles Fritz. Alfred signed an agreement that the accountant should be allowed $105 on account of a debt of Benjamin paid by the accountant. At the audit Alfred claimed the balance of his father's share in the estate of Charles Fritz. Judgment creditors of Benjamin opposed the claim. The auditor found that Alfred had been emancipated by his father, that there was a sufficient consideration and no fraud, and accordingly allowed the claim.

Exceptions to the auditor's report were sustained by the court, in the following opinion, by ALBRIGHT, P. J.:

" On Feb. 19, 1887, Benjamin Fritz by writing under seal sold and transferred to his son Alfred all the estate and interest which he could or might thereafter have in the estate of his father, Charles Fritz, immediately upon the latter's decease. Charles Fritz died on April 8, 1891, leaving a will wherein Benjamin is a legatee.

" Judgments were recovered against Benjamin, as follows : By P. R. Bear on Feb. 2, 1876, for $23.93 ; by John Bleiler on Jan. 8, 1887, for $220.22 ; by Henry Stine on Feb. 16, 1887, for $123.90. Upon each of these an execution attachment was issued after the decease of Charles, for the interest of Benjamin in his deceased father's estate, and served upon the defendant and Josiah Fritz, the executor of the will. The legacy of Benjamin is more than sufficient to pay the demands of the attaching creditors. They insist that the assignment to Alfred is fraudulent and void as to them. The learned auditor sustained the assignment and distributed the legacy in question to Alfred.

"Benjamin Fritz testified: I was sick and behindhand for rent and other necessaries; asked Alfred to loan me some money; he said he would help me along, but I must give him security; he was working at his trade—tinsmith for Hersh &. Bro.; he gave me some money; the first time $100, that was April 16, 1883; I told him then I expected to get some money from my father sometime, and I would assign that over to him, and in consequence he gave me these moneys: On Feb. 20, 1884, $175; March 5, 1886, $50.00; Feb. 19, 1887, a check for $300 and $25.00 in cash; this $325 was paid me when I assigned to him my prospective share; May 10, 1889, he gave me $10; all these payments were made in consideration of this transfer; Alfred worked at Hersh's the whole time he paid me these moneys; he got his wages himself; while he was single he made his home with me; I gave him free when he commenced to work at Hersh's; told him he must pay board and the balance of the wages he·might have; he paid his board from time to time up to the time he left home—paid it outside of the sums I testified to.

"Cross-examination: In 1883 I lived in Allentown—a shoe-maker, working for myself; think Alfred was 27 years old last April (1892); don't remember if he was in his seventeenth year when he commenced to learn his trade at Hersh's; he had to serve an apprenticeship of three years; he got $300 for the three years; when he began to learn his trade he began to pay board; while learning his trade he paid $2.00 a week board, regular; on April 16, 1883, he gave me $100; I wrote it same day in this little book; I can't say how long after I got the $175, I am bothered; he had finished learning his trade when he gave the $175; $300 was a check of Hersh & Bro.; I paid my debts with the $300; did not hand the $300 back to Alfred; my son first asked me for security when he gave me the $175.   Q. Tell me why the assignment was made a few days after the judgments had been obtained by Bleiler and Stine?   A. I did not know that they had taken judgments; I did not appear; I knew they had brought suit against me; assigned shares so that son should have security; not so that Bleiler and Stine could not collect their judgments; Alfred may have stayed at home six months after he married; from the time he began learning his trade he bought his clothing; gave him no paper when he gave me the

$100, nor the $175, nor the $50.00; when I got the $325 he had his own family and did not live with me; he had some money when he began to learn his trade; do not know how much; in 1887, and for some years prior, I was unable to pay my debts; I had no property of any kind; had other debts than Stine and Bleiler; owed Peter Bear and other people, I can't tell who.

"The mother of Alfred testifies that he was 28 years old last April (1892); thinks it will be twelve years this fall (1892) when he went to Hersh's.

"Alfred Fritz testifies: Worked over-time; made pipe (over-time); began about a year after I started; earned towards fall and spring for extra work as high as $15.00 to $20.00 a week; sometimes it did not run to $15.00, but most of the time it ran from $15.00 to $20,00 a week extra during the last two years of my apprenticeship; I insisted upon some security, and we went to Kase and asked him if I could take an assignment of my father's expectancy; Kase said it could be done; father said there was something else that would make me trouble; was a note from Stine and a note of Bleiler; I asked Kase whether my paper would be all right; he said it was; this just after the assignment was made. (He testified to much more in chief—mainly agreeing with his father's statements.)

"Cross-examination: I borrowed the money (the $300) from Frank Hersh; repaid it not long afterwards in cash; I knew he had been sued before, and that was the reason that paper was made to secure my money; knew he was insolvent, no property and debts; I had no property at the time, not even the household furniture, that was my wife's, except two stoves and tinware.

"Franklin Hersh testifies that Alfred got $50.00 the first, $75.00 the second, and $175 the third year of his apprenticeship.

"These witnesses and claimant's sister testified to much more. The above indicates the nature of the transaction.

"Though a conveyance of an expectancy as such is impossible at law, it may be enforced in equity as an executory agreement to convey, if it be sustained by a sufficient consideration; the equity of the grantee, if any, springs out of the consideration, and if that is wanting he will vainly ask the aid of a chancellor. Bayler v. Com., 40 Pa. 37. In that case the court refused to enforce such a conveyance where it was in effect a

wife's engagement to pay an old debt of her husband.   See also Jordan v. McClure, 85 Pa. 495 ; Collins's Ap., 107 Pa. 590 ; Power's Ap., 63 Pa. 443.

" Benjamin Fritz does not ask that the assignment of his expectancy shall not be enforced, nor any one in privity with him.   Benjamin wants it enforced for reasons which are manifest.   [It is attacked by creditors whose claims antedate the instrument.   They assert that the transfer is fraudulent in fact; that it is not satisfactorily proved that the son gave the father money before the making of the paper, as they say he did, nor that the son had those sums to advance ; that the $300 was obtained from Hersh to make a show of that sum passing, and that the father after drawing the money on the check privately gave it back to his son, who returned it to Hersh; that the father and son, knowing that the former was insolvent and that his creditors would seize the inheritance when the aged father of Benjamin should die, contrived this method of keeping the inheritance from the creditors' grasp; and that the object was not to secure the son for money advanced in good faith.   An examination of the testimony convinces that this contention of the creditors must be assented to.   The testimony of the two actors in the transaction affords all the argument for this conclusion the case requires.   The deed is void as to these creditors.] [1] Between the parties thereto it stands. What remains after these attaching creditors are satisfied will be distributed to the son."

In a supplemental opinion the court said :

" [It is now urged that the transfer to Alfred cannot be declared to be within the statute of frauds, because what was conveyed was not property of the character contemplated by said statute, and therefore the transfer cannot be held to have been fraudulent even if without consideration and intended to forestall creditors.   The answer to that is a reference to the authorities referred to in the former opinion ; they establish that an assignment of this nature will not be enforced unless the claimant shows a sufficient consideration and that the transaction is equitable.] " [2]

*Errors assigned* were (1, 2) opinion as in brackets; (3–6) in sustaining exceptions to the auditor's report; quoting opinion and exceptions.

*James S. Biery*, for appellants.—Expectancies can be sold and transferred in the lifetime of the ancestor: Bayler v. Com., 40 Pa. 37; McWilliams v. Nisey, 2 S. & R. 517; Power's Ap., 63 Pa. 445; Root v. Crock, 7 Pa. 380; Brown v. McCormick, 6 Watts, 60; Washabaugh v. Entriken, 34 Pa. 74; McClure v. McClure, 1 Phila. 117; Wilson's Est., 2 Pa. 330; Rash's Est., 2 Pars. 160; Bisph. Eq. § 165; Holroyd v. Marshall, 10 H. of L. Cas. 209; Chew v. Barnet et al., 11 S. & R. 391; Stover v. Eccleshimer, 46 Barb. 84; East Lewisburg L. & M. Co. v. Marsh, 91 Pa. 96; Story's Eq. Jur. § 1040; Field v. City of New York, 6 N. Y. 179; R. R. v. Woelpper, 64 Pa. 372: Woodward's Est., 1 Chester Co. R. 417.

The consideration for the assignment was sufficient. Benjamin Fritz says that he emancipated his son Alfred when he went to learn his trade, and that too stands uncontradicted. Alfred testifies to the same fact. Hence all these moneys earned by Alfred belonged to him as his own: McCloskey v. Cyphert, 27 Pa. 220; Brown's Ap., 86 Pa. 527; Galbraith v. Black, 4 S. & R. 207; United States v. Mertz, 2 Watts, 406; Holdship v. Patterson, 7 Watts, 547; Torrens v. Campbell, 74 Pa. 470; Beaver v. Bare, 104 Pa. 62; Rush v. Vought, 55 Pa. 438.

The assignment was not made with the intent to hinder, delay or defraud creditors. The auditor has found the fact that it was not, but the court reversed him and decided the case against us on that ground. Facts found by auditors are conclusive, unless shown to be a clear mistake: Brua's Ap., 55 Pa. 294; Pittsburgh's Appeal, 70 Pa. 146: Speakman's Ap., 71 Pa. 25; Harland's Accounts, 5 Rawle, 323; Stehman's Ap., 5 Pa. 416; Bedell's Ap., 87 Pa. 512.

Fraud is not to be presumed without satisfactory proof of its existence; this can scarcely be affirmed, where a proper motive exists, which might have been as readily the operating motive as one that was fraudulent: Bear's Est., 60 Pa. 436; Lutton v. Hesson, 18 Pa. 109; Shoemaker v. Kunkle, 5 Watts, 108; Hopkins v. Beebe, 26 Pa. 85; Bentz v. Rockey, 69 Pa. 77; Walker v. Bank, 98 Pa. 578; Banking Co. v. Fuller, 110 Pa. 163. See also Covanhoven v. Hart, 21 Pa. 495; Craver v. Miller, 65 Pa. 456.

The statute of Elizabeth does not avoid the transfer of every species of property or interest, even when made to delay or

hinder creditors, or to prevent the application thereof towards liquidating the vendor's debts: 8 A. & E. Ency. L., p. 75; Rhead v. Hounson, 46 Mich. 243; Kerr, Fraud and Mistake, 209; Bump on Fraudulent Conveyances, 68; Selheimer v. Elder, 98 Pa. 154; Ins. Co. v. Field, 45 Pa. 133; Carland v. Cunningham, 37 Pa. 228; Day v. Ins. Co., 111 Pa. 507; Lane's Ap., 105 Pa. 65; Peebles v. Meeds, 96 Pa. 154.

*John Rupp*, *E. H. Stine* and *C. J. Erdman* with him, for appellees.—An heir or expectant devisee or legatee may in the lifetime of the testator or intestate sell or assign his expectant or contingent interest, and if the contract be founded on a valuable consideration, equity will enforce it: Baylor v. Com., 40 Pa. 37; Power's Ap., 63 Pa. 443; Collins's Ap., 107 Pa. 590; Jordan v. McClure, 85 Pa. 495; Whelen v. Phillips, 151 Pa. 312. It will be seen from the cases cited that the sale of a mere expectancy in Pennsylvania is void at law, but may be enforced in a court of equity when founded upon a sufficient consideration, and not made for the purpose of hindering, delaying and defrauding creditors of the vendor or assignor. The burden is therefore upon the assignee to show that the assignment is founded upon a sufficient consideration, is free from fraud, and such as a chancellor would enforce in a court of equity.

OPINION BY MR. JUSTICE GREEN, March 5, 1894:

There is nothing practically in controversy in this case except the sufficiency of the consideration for the assignment of Benjamin Fritz of his expectancy in his father's estate, to his son Alfred Fritz, the appellant. It has been many times decided, and is not at all controverted, that such an assignment is valid if founded upon a sufficient consideration. The auditor in the court below decided as a matter of fact that the appellant did furnish the money, to the amount of $625, to his father, in consideration for the assignment. If the money was furnished it was sufficient in amount to constitute a good and valuable consideration for the assignment. The auditor had the witnesses before him, he heard their testimony, he could observe their manner of testifying, and was therefore able to judge of their credibility. He accredited them as witnesses by accepting their testimony as true, and basing his conclusions

of fact upon it. In point of fact no attack was made upon the character of any of them as truthful witnesses. Not one of them was contradicted by any witness as to any statement made. On the contrary the only witness examined for the appellees, F. H. Hersh, corroborates Alfred Fritz in every particular, and when he said the $300 which he loaned Fritz was repaid in a few days, he corrected himself on his cross-examination, and said he did not receive the money and did not know when it was paid back, and in fact knew nothing at all about it except that his firm did not lose the money. Upon the supposed fact that this money was paid back in a few days the learned court below, principally, inferred that the money was never really used by Benjamin Fritz but was handed back to his son Alfred in a few days and by the latter was paid to Hersh, and therefore the transaction was collusive and done with intent to defraud the creditors of Benjamin Fritz. If the testimony justified this inference, the conclusion would be warranted. But Benjamin Fritz testified positively that he used the money to pay a doctor's bill, some debts he owed, and rent and necessaries for his family. He also testified positively that he never returned any of the money to his son. Alfred Fritz also testified that his father did not return any part either of the $325, or of any of the other sums he had loaned him, and that he had not paid him anything on account of any of the loans. He also admitted that he had repaid the $300 to Hersh not long after he borrowed it, but did not say how soon after. He did say however that he had earned the money he paid to Hersh, not only in working over time, but in painting and in other work.

In order to justify the inference that the moneys, claimed by Alfred Fritz to have been paid to his father, were not paid, it is necessary to find that both of them were guilty of perjury and of fraud. Alfred Fritz had worked for eleven years for the same employers, and was still working for them. They had confidence enough in his integrity and his honesty, to lend him $300 upon his own request and without any security. One of his employers testified that Alfred had earned money by doing overwork though he could not name the amount. Without any contradictions of Alfred's testimony, without any impeachment of his character as a truthful witness, with affirmative proof from the testimony of the appellee's witness, corroborat-

ing his testimony as to all material details, and in face of the clearest proof of his industrious habits and of his personal honesty and of the manifestly good opinion of him which must have been entertained by his employers, we think an inference of either fraud or perjury against him is entirely too harsh, and cannot be justified. The auditor has found in favor of his claim with, of course, a better opportunity of judging of his truthfulness than either the court below or we can have, and such finding of facts we must regard as the verdict of a jury, not to be disturbed except upon the clearest proof of mistake. We fail to find any such proof in the case. Fraud is not to be presumed but proved. We do not think it has been proved in this case and we do not feel at liberty to presume it. We are unable to find any testimony which will authorize such a presumption. Without further discussing the subject, although it is capable of much greater elaboration in the same direction, we think that the findings of the auditor should be sustained, and that it was error to reverse them.

The assignments of error are all sustained.

The decree of the court below is reversed at the cost of the appellees, and the record is remitted with instructions to distribute the fund in accordance with the first report of the auditor, but allowing the sum of $105 to Josiah Fritz.