## Phillips's Estate.    No. 1.

*Decedents' estates—Assignment of expectancy—Construction of written instrument—Evidence—Witness—Act of May 23, 1887.*

1. Where a writing delivered by a son to his mother is alleged to be an assignment of his expectancy in her estate, but is claimed by him to be merely a release to her of what she owed him, and the paper itself is ambiguous on its face, the testimony of witnesses and the declarations of the mother herself are admissible in evidence in partition proceedings after the mother's death to show that it was the understanding of both parties that the paper was a mere release to the mother of what she owed him and not an assignment of his interest in her estate if she died intestate.

2. In such case, the son is a competent witness, inasmuch as he was not a surviving party to the thing or contract in action within the prohibition of clause (e) of section 5 of the Act of May 23, 1887, P. L. 158.

3. The declarations of the decedent were also admissible, inasmuch as the rule excluding hearsay evidence does not apply to oral or written declarations of deceased persons made against their interest.

4. The assignment of an expectancy in an estate of a living person may be enforced as an executory agreement to convey, but such assignment must be sustained by a valuable, and not merely a good, consideration.

5. The consideration of the sum of one dollar is insufficient, and especially is this so where the enforcement of the assignment would violate the presumption in favor of the rule of equity among children.

*Partition—Issue—Act of June 7, 1917.*

6. Where, in partition proceedings, there is nothing at issue except the construction of a paper, the matter is for the court alone, and an issue will not be directed to the Common Pleas, as provided by section 21 of the Act of June 7, 1917, P. L. 363, 382.

Petition for partition. O. C. Greene Co., June T., 1926, No. 1.

*Scott & Hook,* for petitioner; *Montgomery & Waychoff,* contra.

SAYERS, P. J., Oct. 26, 1927.—Isabelle Phillips died intestate Dec. 28, 1925, leaving as her only heirs-at-law two sons, Curl H. Phillips, aged fifty-five, and George W. Phillips, aged fifty-three, and seized of a house and two lots of ground in Carmichaels Borough.

On April 26, 1926, Curl H. Phillips presented his petition to this court and obtained a citition on George W. Phillips to show cause why an inquest in

partition should not be awarded. To this citation George W. Phillips made answer, denying the right of petitioner to have partition, for the reason that he is barred by an assignment of his expectancy, Exhibit "A," attached to the answer, and is not entitled to any interest in said real estate as an heir of decedent, and is, therefore, without standing to demand partition. The respondent also alleges that he had exclusive possession of the premises, and that no attempt to agree upon a partition had been made prior to the filing of the petition.

In a replication filed, Curl H. Phillips averred that decedent died seized of the premises, and that respondent was not in exclusive possession and was only entitled to his one-half of the premises as an heir of decedent. Petitioner avers that the alleged release is not a release of his interest in the estate of decedent, and was not intended so to be, and could not operate as such because it was without consideration; also, that the writing was, as intended to be, a release only of any and all claims which petitioner then had, or might thereafter have, to any real or personal estate then belonging to Isabelle Phillips.

Testimony was taken before the court and the case argued, and it appeared that the only real question in controversy was whether or not the alleged assignment of expectancy was a bar to respondent's claim of title and right as an heir-at-law to the real and personal estate of decedent? If the writing was not an assignment or release of petitioner's interest in decedent's real estate, then he is entitled to partition.

*Facts.*

We have filed elsewhere an opinion involving the construction of this paper. The testimony relative thereto was taken in a case at No. 34, June Term, 1926, wherein it was claimed, *inter alia*, that by said paper Curl H. Phillips had assigned and released all interest in his mother's estate, and, consequently, had no right to letters of administration thereon. [See next case.]

It seems to be conceded that the real estate and personal property that decedent had on Oct. 26, 1907, was devised to her by John W. Phillips, her husband, who died intestate in 1901, and who devised to each of his said sons, the petitioner and respondent here, the sum of $1. Curl H. Phillips was claiming that he never received through his mother what he should have received from his father's estate, as well as other money he had given to her from time to time, which she kept, claiming she was entitled to keep because "she had raised him" and presumably had a right to apply the money to pay his board and maintenance.

The court, at the hearing, permitted evidence to be taken for the purpose of showing the circumstances under which the paper marked Exhibit "A," page 37 of the testimony, was executed and delivered by Curl H. Phillips to the said Isabelle Phillips. Curl H. Phillips, apparently disappointed at not receiving more money from his father's estate, kept demanding from his mother from time to time that she give him the one dollar that was bequeathed to him. He was a soldier in the Spanish-American War, and had given his mother to keep for him $200 of money he drew while in the army, $425 he earned working on a mail route for M. M. Thompson, and $200 he earned working on an engineering corps, in all about $880.76 (page 8). Decedent admitted that she owed Curl over $800, part of which he got before he went to the Philippines. See testimony of Louie Guseman, page 16.

He asked his mother for this money, and the dollar bequeathed to him, frequently, but she denied owing it to him, and that started trouble between

them, and he says it would cause him to take to drinking. She appeared to have refused to pay him his money, claiming that she had raised him and was entitled to the money.

It is claimed that the release, Exhibit "A," needs no explanation, that its meaning is apparent, and there are no latent ambiguities to be reconciled in order to understand the writing. In view of the above-recited facts, the paper might bear either of two constructions. It may be construed to be a release of any and all claims that he might assert on account of the money claimed by him from his mother, and an agreement not to molest or disturb her in the future. It is not at all clear, nor does the language of the paper sustain the contention of the appellant, that it was intended to be a release of all interest of the appellee in his mother's estate. The evidence taken before the court was for the purpose of ascertaining, if possible, which of these two purposes was in the minds of the parties at the time the paper was executed.

About the time the paper was executed, Oct. 26, 1907, Curl claimed his mother owed him the aforesaid sum of money, and they had some trouble about it and went to 'Squire J. L. Rea's office and stated to him that they had settled their difficulties and asked him to draw up a paper, by which Curl would agree to treat his mother properly in the future and behave himself properly toward her. Subsequent to the execution of this paper, Louie Guseman, who was well acquainted with decedent, testified that she talked with her about her business and asked her "why she didn't make a will, and she said, when she was gone it would be divided any way" between the children, and that decedent had mentioned the matter more than once. Flossie Feitt testified that she was nursing Mrs. Phillips at one time, and Mrs. Phillips told her to get the paper (Exhibit "A"), that she wanted to see it, and wanted the witness to see it. Mrs. Phillips "said she had that paper, but it didn't amount to anything. She just had it to scare Curl, and I asked her to go ahead and get her business straightened up, and she said it would be all right."

Another witness, Agnes Baker, said Isabelle Phillips exhibited the writing to her, and she "said the paper wasn't worth the paper it was wrote on." Mrs. Louie Kuhn said she often talked to decedent relative to the disposition she would make of her property after her death, and she said "it was hers while she lived and then it went to the children."

Bigler Miller says when she was sick in bed and was talking about dying, "I said, why don't you make a will and will it to the two boys?" She said, "I reckon they will get it anyhow." "We got to talking about this paper (Exhibit 'A'); she said it wasn't worth the paper it was written on."

'Squire Rea said he had a conversation with Curl H. Phillips, shortly after his mother's death, about the paper, and he asked the 'squire if he still had it, and, in speaking about his right to participate in his mother's estate, he said "he didn't know whether he had any rights or not."

Curl H. Phillips says he refused to sign a paper (a renunciation) which 'Squire Rea asked him to sign shortly after his mother's death and before letters were granted to George W. Phillips.

In view of the facts as we have found them to be, this court has arrived at the conclusion that the paper was executed as a release to Isabelle Phillips of all claim of the said Curl H. Phillips that he then had, or might thereafter have, against her property or the money which he claimed she had received from him, and an agreement on his part to forego his right to demand payment of the same from her. The wording of the paper itself will support this

construction, based on the fact alone that she had his money in her hands and claimed the right to withhold payment from him. When we consider the additional fact that she declared in effect and on several occasions that it did not affect his right to claim his share of her estate, and that he would participate equally with his brother in her estate, we can readily conclude that it was not intended to bar his right to claim as her heir. Curl H. Phillips was not a good witness, but he made it sufficiently clear that he had a money claim against his mother, and that he intended by the paper, Exhibit "A," to release his claim against her and her property.

We believe that the testimony of Curl H. Phillips to these facts was competent and relevant, because he was not a surviving party to the thing or contract in action within the prohibition of clause (e) of section 5 of the Act of May 23, 1887, P. L. 158, and he comes within the exception that where the controversy is "between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses." See Allen's Estate, 207 Pa. 325.

Nor was the objection to the testimony of the witnesses who testified to the declarations of decedent well taken. "If there is anything well settled, it is that the rule excluding hearsay evidence does not apply to oral or written declarations of deceased persons, made against their interest" (Taylor v. Gould, 57 Pa. 152), even if the testimony in this case could be construed as against the interest of decedent.

The alleged release or assignment, being for $1, was without sufficient consideration, and, moreover, the construction contended for by the appellant violates the presumption in favor of the rule of equality between children: Morris et al. v. Carlin, 5 Dist. R. 714.

## Discussion.

Shall we construe this paper to mean that the petitioner was releasing a claim which he had against his mother, or did it mean that he was assigning to her his expectancy in her estate? Was it not absolutely necessary to take testimony to show what was meant by the word claim in said paper? The paper almost of itself bears the construction that it was a release of all claims he had against his mother, and of such part of her property as she had from her husband, and which was apparently all the property she had at the time.

It is certainly not clear from the language of the paper itself that it was intended as an assignment of his expectancy in his mother's estate. He was assigning all claims "I *now* have to property that *now* belongs to Isabelle Phillips."

An assignment of an expectancy may be enforced as an executory agreement to convey, if it is sustained by a sufficient consideration: Fritz's Estate, 160 Pa. 156. In Lennig's Estate, 182 Pa. 485, 495, the court says: "There are plenty of authorities in relation to this species of assignment or grant, but the sum of the whole of them is that at law they convey nothing, and in equity they must be founded upon a valuable, not merely a good, consideration."

Here, there was no valuable consideration moving to Curl H. Phillips. His mother was not purchasing his share or expectancy in her estate. She is presumed to know that she could control that by will without his joinder or consent. No; the paper and the testimony show that she paid a consideration of $1 to obtain from him a release of his claim to a part of his

father's property and to money he had given her to keep for him, or to pay for his maintenance, as she alleged.

The construction contended for by respondent violates the rule that the presumption in such cases is always in favor of equal distribution.

In Miller's Appeal, 31 Pa. 337, 340, the court says: "I entirely agree that to give an instrument the effect of a release of all future interest in an estate to which one is an heir, it should be clear and unambiguous. The intention should be manifest. Presumptions are all in favor of equal distribution." See, also, Power's Appeal, 63 Pa. 443, 445, to the same effect. Whether or not, in the absence of explanation, this paper could be sustained as a valid assignment depends on the *bona fides* of the transaction and the adequacy of consideration: Kuhn's Estate, 163 Pa. 438, 441. It is extremely doubtful, on the face of the paper alone, as to whether or not it was intended to operate as an assignment of an expectancy. If so, it has not on its face any evidence that it was intended in good faith so to be, and such intention falls for want of an adequate consideration to support it. "The burden of proof is upon the purchaser of the expectancy to show that the consideration given was adequate:" 5 Corpus Juris, 862 (29).

There is nothing at issue here except the construction of the paper, and that is for the court. There is, therefore, no such substantial dispute arising out of the facts as would require the court to direct an issue to the Common Pleas, as provided in section 21 of the Orphans' Court Act of June 7, 1917, P. L. 363, 382.

From all of which we reach the legal conclusions:

1. That the paper, "Exhibit "A," was a release of a claim or claims which petitioner had against decedent for moneys secured by her and (on) property she received, which he claimed he should have had from his father.

2. That it was not an assignment of his expectancy in her estate, and even if so intended, it fails for want of an adequate consideration.

3. That the petitioner is entitled to partition.

And now, Oct. 26, 1927, it is ordered, adjudged and decreed that the citation to show cause why an inquest in partition should not be awarded is hereby made absolute and partition is awarded as prayed for; the return of the commission or inquest to be made to the next term.

From S. M. Williamson, Waynesburg, Pa.