Norris's Estate.

484

Argued January 18, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

B. D. Oliensis, with him Howard Lewis Fussell and Milton H. Weissman, for appellant.

Ernest Scott, with him William C. Bodine and Thomas Stokes, of Pepper, Bodine, Stokes & Schoch, and James A. Cochrane, for appellees.

William T. Connor, with him John R. K. Scott, Hardie Scott, H. E. Potter, Frank A. Mooreshead, George T. Butler and R. W. Beatty, for appellee.

Clarence G. Myers, with him Albert C. Weymann, Jr., and Duane, Morris & Heckscher, for appellee.

John Wintersteen, of Wintersteen, McCoy & Wintersteen, and George T. Butler, for appellee.

OPINION BY MR. JUSTICE LINN, March 21, 1938:

This appeal is from the approval of a compromise agreement pursuant to section 40 of the Fiduciaries Act of 1917, P. L. 447, 508, 20 PS section 787. The section is in these words: "Whenever it shall be proposed to compromise or settle any claim, whether in suit or not, by or against a minor or the estate of a decedent, or to compromise or settle any question or dispute concerning the validity or construction of any last will and testament or the distribution of any decedent's estate, the orphans' court having jurisdiction of the accounts of the fiduciary shall be authorized and empowered, on petition by such fiduciary, setting forth all the facts and circumstances of such claim or question and proposed compromise or settlement, and duly verified by oath or affirmation, and after due notice to all parties interested, and after due consideration, aided, if necessary, by the report of a master, if satisfied that such compromise or settlement will be for the best interests of such minor or of the estate of such decedent, to enter a decree authorizing the same to be made, which decree shall operate to relieve the fiduciary of responsibility in the premises."

The case does not call for definition of what may be included or excluded by the words "parties interested" as there used; the appellant appeared and was heard, as interested,[1] in circumstances in which, on his appeal, we shall review the record as presented: cf. *McGinley's Estate*, 257 Pa. 478, 101 A. 807.

---

[1] The petition for approval of the settlement contained this averment: "Petitioners have no knowledge as to whether said alleged assignments [including appellant's] are valid or enforceable but desire to bring to the attention of your Honorable Court the existence of said alleged claims, reserving the rights of all petitioners and all signatories on the annexed agreement in the premises, and believing that said claimants must come before this court or be debarred from voicing any objection to the agreement of compromise and settlement."

Isaac Norris, a widower, aged about seventy, died July 6, 1936, survived by a daughter, Mrs. Van Meter, leaving a will and codicil dated August 12, 1931, and July 30, 1934. He gave his property, appraised at $1,-333,730.96, to collaterals and charities, leaving nothing to his daughter. She filed a caveat alleging (1) undue influence, (2) lack of testamentary capacity, (3) that her father had agreed to leave all his property to her. The Pennsylvania Company for Insurances, etc., named as executor and trustee, was appointed administrator *pendente lite.* Hearings were had by the Register of Wills, July 23, 1936 and October 14, 1936. On December 29, 1936, while the proceeding before the Register was pending, this petition[2] was filed, by the administrator *pendente lite* and others, asking the court to approve a proposed settlement. Notice of hearing on the petition was given to two persons who claimed under assignments made by Mrs. Van Meter, during her father's lifetime, of part of what she hoped to receive from his estate after his death; one of these assignees was Angela B. Klein, the other, Joseph L. Rosenberg, now the appellant. During the proceedings below, the Klein claim was settled for $2,000 and so drops out of the discussion.

---

[2] The prayers of the petition were "to enter an order as follows: 1. Finding that the said annexed agreement of compromise and settlement is in the best interest of the estate and approving said agreement; 2. Directing that a copy of said agreement be lodged with the Register of Wills and made a part of the record in the case; 3. Decreeing that, upon the withdrawal of the caveat, and upon probate by the Register of Wills of the will of Isaac Norris, deceased, dated August 12, 1931, and codicil thereto dated July 30, 1934, the said agreement of compromise and settlement shall take effect and be operative and (a) the Administrator *pendente lite* be directed to make the disbursements provided in said agreement of compromise and settlement; (b) the Executor and Trustee named in the will of Isaac Norris, deceased, be directed to administer and distribute under said will and codicil as modified by the aforementioned agreement of compromise and settlement."

In her father's lifetime, Mrs. Van Meter had filed a bill against him for a decree (a) that he had orally agreed to leave to her his entire estate; (b) that any testamentary writing theretofore made by him, leaving his property to others, be declared void; (c) that he be restrained from making a will in violation of the alleged contract; and (d) that a guardian be appointed to prevent dissipation of his property. On preliminary objections the bill was certified to the law side of the court: *Van Meter v. Norris,* 318 Pa. 137, 177 A. 799. She had also brought another suit against her father by a bill to perpetuate testimony in support of the contract referred to.

The petition contained the agreement dated December 19, 1936, made by the beneficiaries under the will and codicil, together with the Pennsylvania Company, etc., as administrator *pendente lite,* and as executor and trustee under the will, together with the guardian *ad litem,* the trustee for unborn children, the University of Pennsylvania, contingent legatee, and Mrs. Van Meter, showing that the parties had agreed, so far as need now be stated, that the will and codicil should be probated; that certain distribution should be made; and, inter alia, that "Mary Van Meter, party of the third part, shall receive in equal quarterly payments during the course of her natural life, 30% of the net income of the said estate as above defined for her sole and separate use and without power of anticipation, and without being subject to assignment, or to attachment, lien, levy or sale by any of her creditors, purported assignees, or other persons whatsoever." She agreed "to mark discontinued, settled, and ended," the two suits referred to above.

At the hearing, December 29, 1936, the appellant, Rosenberg, appeared in person and by counsel and objected to the approval of the settlement unless his claim was allowed. He based his objection on four separate assignments made by Mrs. Van Meter under which he

claimed one-tenth of decedent's estate. While the money consideration named in the assignments is one dollar, it is agreed that he paid to her at various times various sums amounting in all to $2,000. Two assignments were dated March 13, 1936, and the other two, June 10, 1936. Their execution was admitted but, when they were offered in evidence, counsel for petitioners objected on the ground that the only matter before the court was whether the proposed settlement should be approved and that the appellant's claims were irrevelant to that inquiry. The court, at that time, sustained the objection and stated, in substance, that the assignments could be presented for consideration at the audit of the fiduciary's account. When that ruling was made, counsel for appellant said: "But here is my difficulty: if this agreement of settlement is allowed, it has a spendthrift trust clause in it. If the agreement is consummated I am afraid that my assignments will be divested." The learned judge replied: "The agreement reserves your rights. [See paragraph 4 of the decree.] It says it cannot be affected." The court then made a decree[3] of approval without prejudice to appellant's

---

[3] "1. The Court finds the agreement of compromise and settlement, annexed to said petition as Exhibit B, is in the best interest of the estate and said agreement is hereby approved.

"2. That a copy of said agreement of compromise and settlement be lodged with the Register of Wills and be made a part of the record in the case.

"3. That, upon the withdrawal of the caveat, by the caveator, and upon the probate by the Register of Wills of the will of Isaac Norris, deceased, dated August 12, 1931, and the codicil thereto dated July 30, 1934, the aforesaid agreement of compromise and settlement shall take effect and be operative, and

"(a) The Pennsylvania Company for Insurances on Lives and Granting Annuities, Administrator *pendente lite,* be directed to make the disbursements provided by the said agreement of compromise and settlement hereby approved, and in due course to account as such Administrator, subject to further order of this court;

"(b) The Pennsylvania Company for Insurances on Lives and

right to submit his claim "at the proper time for adjudication in due course."

Appellant filed exceptions to that decree, again asserting his interest and claim to be heard, in this proceeding, against the approval of the settlement. Thereafter, on January 26, 1937, the administrator *pendente lite* filed its first and final account, which was followed by notice that it would come on for audit on March 1, 1937. The next thing shown in the record is that on June 23, 1937, and July 12, 1937, the parties appeared in open court for the consideration of "Exceptions to the Decree of Compromise." Testimony was presented on behalf of appellant's claim on the assignments which, though excluded at the hearing in December, were now received in evidence over petitioners' objection, together with evidence of the transactions culminating in the assignments. The learned court then filed an opinion which shows the scope of the issues presented and adjudicated in the decree appealed from. As showing precisely what appellant then claimed, the learned judge quotes from the brief submitted to him on behalf of appellant, as follows: "Counsel consider it pertinent to state that it is not the purpose of this exceptant to object to or attempt *in any manner* to upset that provision of the settlement agreement by which Mrs. Van

Granting Annuities, Executor and Trustee named in the will and codicil of Isaac Norris, deceased, be directed to administer and distribute in accordance with the terms of said will and codicil as modified and supplemented by said agreement of compromise and settlement, and to account in due course, subject to further order of this court.

"4. This Decree is entered without prejudice to the rights of any persons asserting claims against the Estate of Isaac Norris, Deceased, or Mary Lloyd Norris Van Meter, to submit such claims to this Court at the proper time for adjudication in due course. The parties having reached a settlement with Angela B. Klein, one of the assignees referred to in the petition, it is further ordered that the sum $2,000 be awarded Angela B. Klein out of the income payable to Mary Van Meter in full settlement of her claim."

Meter is given a life interest in 30% of the residue of her father's estate, and the whole purpose of counsel for Joseph L. Rosenberg in this present proceeding is to sustain his claim to one-tenth of the 30% of income which will pass to Mrs. Van Meter under the terms of the compromise, and to prevent the operation of the spendthrift trust clause in relation to that particular part of the income."

The court then concluded that Rosenberg should receive from or on Mrs. Van Meter's account the $2,000 which he had paid to her, together with interest and counsel fees; that if he would accept $5,500 in satisfaction of such aggregate, or if he declined to accept it and the amount were paid into court in satisfaction of the claim, the exceptions to the decree theretofore made would be dismissed and the settlement would be approved. Rosenberg declined to accept it; the money was paid into court, whereupon he, and a number of other parties, excepted. These exceptions were disposed of on August 13, 1937, in a supplemental decree, the last paragraph of which is in these terms: "If the Exceptant Joseph L. Rosenberg desires to appeal from this decree, and will stipulate that the appeal to be pressed will be limited to that portion of the agreement only which deals with the 'spendthrift trust clause' respecting the payment to Mary Van Meter of the sums provided therein, then the appeal will be made a supersedeas upon the Appellant filing a bond with approved security in the sum of $1,000." Such a bond was filed and this appeal followed, we assume, on the condition specified.

Appellant's contention now is that while he invoked the aid of the learned court below in this proceeding and, in part, received what he asked for, he should have received more; that the court should have decreed that he is entitled to receive, from time to time, 10% of the income payable to Mrs. Van Meter, and that the decree approving the settlement should be amended accordingly. The validity of the contention must be tested by es-

tablished equitable principles to be considered in the course of this opinion.

Section 40, 20 PS section 787, contemplates a full and complete presentation of the facts and circumstances in order that the court may ascertain and decree what is "for the best interests . . . of the estate of such decedent." We think we should sustain the action of the learned president judge, in receiving in evidence in the circumstances stated, the assignments relied on by appellant. When section 40 is invoked, much must be left to judicial discretion; the record must, of course, sustain the decree. The judge is not bound by what the parties may have agreed to; he must exercise his independent judgment on the whole case (compare *Stoffel's Estate*, 295 Pa. 248, 145 A. 70) and the decree is subject to review on appeal.

It was stated in the oral argument that decedent's collateral relatives, the beneficiaries under his will, who were also relatives of Mrs. Van Meter, wished to provide an income for her which the record showed she needed and would not otherwise have. The settlement proposed in the petition was made for that purpose. In appellant's efforts to show that there was abuse of discretion in approving the settlement, he suggests that Mrs. Van Meter acted unlawfully or in breach of her contract with him, when she dismissed the two equity suits, withdrew the caveat and became a party to the compromise agreement containing the spendthrift trust provision. Mrs. Van Meter had the right, with the court's approval[4] evidenced by the decree, to discontinue the proceedings instituted by her: *Gordon, Secretary of Banking, v. Hartford Sterling Co.,* 319 Pa. 174, 179 A. 734. Indeed, the assignments expressly reserved to her the right to control the proceedings "by judg-

---

[4] Apart from the authority conferred by section 40, supra, discontinuance has always been subject to the discretion of the court: *Cross's Estate,* 309 Pa. 418, 164 A. 516; *Adam Hat Stores, Inc., v. Lefco,* 317 Pa. 442, 176 A. 734.

ment, decree, settlement, agreement, stipulation, or in any other manner whatsoever" in one case, and, in the other, by "agreement, contract, stipulation, or in any other manner whatsoever obtained." The oral contract was not enforceable. Of course we do not hold that when probate of an instrument, otherwise entitled to probate as a will, is objected to on the ground that its provisions are in conflict with an alleged agreement to make a different disposition of property, probate may be refused on that ground; the law is otherwise: compare *Carson's Estate,* 241 Pa. 117, 88 A. 311; *Galli's Estate,* 250 Pa. 120, 95 A. 422; *Baum's Estate,* 260 Pa. 33, 103 A. 614; *Hickman's Estate,* 308 Pa. 230, 162 A. 168. The record shows no evidence of any foundation for the caveat; the presumption is that her action in withdrawing it was right. The will, disposing of testator's entire estate, was made more than five years before the assignments; the codicil was made shortly afterward but merely provided that by his will testator intended not to blend "my real estate with my personal estate."

When Mrs. Van Meter executed the assignments, she had neither vested nor contingent interest or estate in the property of her father who was living. She had only an expectancy or hope that on his death she might receive some interest or estate. As she was disinherited, there appeared to be nothing which the assignee could then have asked a chancellor to order Mrs. Van Meter to transfer to him. The alleged contract that he would leave his property to her was oral; the property consisted of both personal and real estate; the consideration was not divisible; the statute of frauds was a bar to an action on the contract: *Morrish v. Price,* 293 Pa. 169, 142 A. 137; *Fuller v. Fuller,* 219 Pa. 163, 68 A. 45; *Hartley v. Decker,* 89 Pa. 470; *Byrne's Estate,* 122 Pa. Super. Ct. 413, 186 A. 187. The compromise agreement, however, gave her the life interest stated above, a part of which appellant seeks in this proceeding. But he took nothing by the assignments except the right to go

into equity for relief in the nature of specific performance.

What was said in *Kuhns's Estate,* 163 Pa. 438, 440, 30 A. 215, may be noted at this point: "At law a valid transfer can be made of anything in actual existence. What the assignor has he may dispose of. What he has not, although he may hope or expect to acquire it, he can make no title to because he has no title himself. But such sales and assignments have been sustained in courts of equity whenever good conscience seemed to require it, and not otherwise: *East Lewisburg Lumber and Manufacturing Company v. Marsh et al.,* 91 Pa. 96; *Patterson v. Caldwell et al.,* 124 Pa. 455. If the consideration for such an assignment is a fair and honest one, the assignment will be treated as an agreement to transfer when the assignee's title accrues, and it will be held to take effect as an assignment when the expectant interest vests in the assignor. The second question affords the only real ground for controversy in this case. Was the assignment to Julia Ann Kuhns good in equity? This must depend on the bona fides of the transfer and the adequacy of the consideration." See also *Lennig's Estate,* 182 Pa. 485, 38 A. 466.

The cases exhibit a difference in the scope of the chancellor's inquiry when, on the one hand, he deals with the assignment of a vested or contingent interest or estate,[5] and, on the other, is asked to enforce the assignment of a mere expectancy[6] or hope; in the former, the inquiry is: was there a valuable consideration; in the latter, as

---

[5] See, among others, *Whelen v. Phillips,* 151 Pa. 312, 25 A. 44; *Jackson's Estate,* 203 Pa. 33, 52 A. 125; *Phillips's Estate,* 205 Pa. 511, 55 A. 212; *Singer's Estate,* 217 Pa. 295, 66 A. 548; *Baeder's Estate,* 224 Pa. 452, 73 A. 915; *Richardson's Estate,* 236 Pa. 136, 84 A. 670; *Carter v. Martin,* 307 Pa. 515, 162 A. 220; *Hollowell's Estate,* 120 Pa. Super. Ct. 576, 182 A. 779.

[6] *Davidson v. Little,* 22 Pa. 245, 252; *Bayler v. Com.,* 40 Pa. 37, 43; *Fritz's Estate,* 160 Pa. 156, 162, 28 A. 642; *Kuhns's Estate,* 163 Pa. 438, 30 A. 215; *Lennig's Estate,* 182 Pa. 485, 38 A. 466.

was said in *Kuhns's Estate,* 163 Pa. 438, 30 A. 215, enforcement "must depend on the bona fides of the transfer and the adequacy of the consideration." The difference results from procedure. The transfer of a vested or contingent interest or estate for a valuable, even if disproportionate,[7] consideration, is supported without inquiry into its adequacy, because the law recognizes the transfer of an existing right or thing. But when a mere expectancy or hope of receiving an interest or estate is the subject of a contract of assignment, no property passes; if and when the *res* comes into existence the assignee invokes the aid of a court of equity to obtain the subject of the assignment, he must disclose a transaction that is not unconscionable or inequitable. The right to a decree of specific performance depends on equitable considerations illustrated in many decisions. They are collected in Bispham's Equity, 9th ed., sections 371 to 377; *Rigg v. Railway Co.,* 191 Pa. 298, 43 A. 212; *Friend v. Lamb,* 152 Pa. 529, 25 A. 577; *Rennyson v. Rozell,* 106 Pa. 407; *Weise's Appeal,* 72 Pa. 351.

In the application of those principles, the learned judge, having before him the records and documentary evidence referred to and the testimony of witnesses, concluded that appellant should receive $5,500. The appellant was not willing to take his chance with an action for damages for breach of contract; instead, he called for a decree that part of what Mrs. Van Meter received should come to him. This called for scrutiny of the good faith of the transactions and the adequacy of the consideration paid by him. Indeed, by presenting his claim in this form, he, in effect, proposed to do what should be equitable in the circumstances; only on that condition could his claim be heard. It also appeared[8]

---

[7] *Singer's Estate,* 217 Pa. 295, 66 A. 548, is a striking example.

[8] On this subject, we quote from the opinion filed below: "A feature of the transaction which discounts the fairness of the assignee was developed by the assignee's counsel in cross-examina-

that in 1935, Mrs. Van Meter had assigned to him, for $2,000, half of her contingent interest in an estate being administered in Massachusetts and said to have been valued at that time at $700,000, the contingency being that she should survive the death, without children, of a woman 46 years of age, then unmarried and childless. Appellant appears to have been fully cognizant of Mrs. Van Meter's situation.

In those circumstances, then, the learned court concluded that equity required that the assignee should be content with the return of his money with interest on the total of $1,000 in each case from the date of the assignment (although Mrs. Van Meter only received it subsequently in installments) together with what seems a very liberal allowance as counsel fees, making $5,500 in all. In appellant's statement of questions involved, he does not challenge the application of the equitable principles by which the amount was arrived at, nor does the argument specify any other sum as warranted by the rule, the only criticism being that the amount is "arbitrary." We cannot think the learned judge should have allowed more.

The appellant is now the only party complaining. The decree disposes of the entire controversy. It is unnecessary to refer to other questions considered in the briefs. When the record is returned, appellant may apply, in the court below, for leave to receive the money paid into court pursuant to the decree: see *Lower Yoder Township School District v. Title, etc., Co.,* 318 Pa. 243, 178 A. 475.

The decree is affirmed at appellant's costs.

----

tion of the Caveator, when it was disclosed that he was the assignee in another estate in Massachusetts in which the Caveator has an interest that was unquestionably unconscionable. He is in better case in this immediate concern of the Court than in the Massachusetts case or than he was (if it were he) in *Hallowell's Estate,* 120 Pa. Super. Ct. 579."