## Swenk Estate

*S. Richard Harr* and *Charles W. Eaby, Jr.*, for proponents.

*F. Lyman Windolph*, for contestant.

BOWMAN, P. J., July 18, 1952.—This is a will contest. In it are raised: (a) The execution of a contract by decedent with another to make mutual or reciprocal wills which, it is claimed, precludes probate of the instrument now in controversy, and (b) fraud or undue influence.

On December 19, 1951, the Conestoga National Bank of Lancaster submitted for probate to the register of wills as the last will and testament of Alice Swenk a writing dated October 4, 1951. The proffered writing of which there is no dispute as to its being testamentary in character gives all of testatrix's estate to Edward J. Phelan and Leah Mae Phelan, his wife, and appoints the bank and Dr. Frank Veri executors. The petition of the bank for letters testamentary was accompanied by Dr. Veri's renunciation as executor.

Alice Swenk died November 14, 1951, at the age of 83 years, unmarried and without issue. On December 14, 1951, Jeanette B. Ulmer lodged a caveat in the register's office, and on December 20, 1951, she presented a petition to this court for a citation directed to the register of wills and the legatees and devisees named in the writing of October 4, 1951, to show cause why the register should not be directed to certify the entire record of the probate of the writing to this court. A citation was issued. Neither Mr. or Mrs. Phelan nor the register filed answers. No hearing was held before the register. On January 10, 1952, this court, exercising its discretion under the provisions of section 18 of the Register of Wills Act of June 7, 1917, P. L. 415, 20 PS §1981, directed the register to certify the record of probate and a hearing was fixed for Wednesday, January 30, 1952. An issue devisavit vel non is requested.

Jeanette B. Ulmer is the widow of Ray H. Ulmer, who was a nephew of one Elizabeth Fisher. He died June 1, 1951. Neither Mrs. Ulmer nor her husband was related to Alice Swenk. It is claimed by Mrs. Ulmer, contestant, that on November 28, 1950, pursuant to an oral agreement, Elizabeth Fisher and Alice Swenk executed what have been termed "mutual or reciprocal wills."

Subject to objection by counsel for the proponents of the writing of October 4, 1951, and a later determination by the court as to the competency of their testimony, we permitted Dr. Frank A. Veri and F. Lyman Windolph, a member of the bar of this court, to testify concerning the alleged agreement and the execution of the wills pursuant thereto.

Dr. Veri testified that he attended both Miss Swenk and Mrs. Fisher professionally and became their friend and adviser; that from time to time Mrs. Fisher consulted him relating to financial matters; that as to the testamentary disposition of her property, it was her desire to leave it to the members of the Ulmer family, but at the same time she wanted to make provision for Miss Swenk in the event Miss Swenk survived her; that he suggested to them the advisability of executing wills simultaneously; that "Miss Swenk draw up a will at the same time that Mrs. Fisher drew up a will, at which time that if Miss Swenk died before Mrs. Fisher her estate would go to Mrs. Fisher, but if she died after Mrs. Fisher, that whatever she had would go back into the estate—in other words the two wills were to be drawn up at the same time and were to be interlocking wills, one depending upon the other for execution."

Mr. Windolph testified that in November 1950 he received instructions for the preparation of a will for Mrs. Fisher (according to his recollection he believes that the instructions came from Dr. Veri and Mrs. Ulmer); that on November 27, 1950, he prepared a will for Mrs. Fisher and also on the same date prepared a will for Alice Swenk; that both wills were executed in Mrs. Fisher's residence on November 28, 1950, in the presence of Mrs. Fisher, Miss Swenk, Dr. Veri, Mrs. Ulmer and himself; that prior to their execution he read both wills in the presence of both decedents.

The will of Miss Swenk (of November 28, 1950) gives her entire estate to Mrs. Fisher, with the provision, however, that if Mrs. Fisher did not survive her, her entire estate is given in equal shares to Ray H. Ulmer, Jeanette B. Ulmer, and June D. Ulmer (a minor daughter of Ray H. Ulmer and Jeanette B. Ulmer), or to the survivor or survivors of them. Mrs. Fisher's will (which was probated by the Register of Wills of Lancaster County on October 24, 1951) devises her residence at 424 North Charlotte Street, Lancaster, Pa., to Ray H. Ulmer and Jeanette B. Ulmer, and bequeaths the residuary estate to Ray H. Ulmer, Jeanette B. Ulmer, June D. Ulmer and Miss Swenk, in equal shares and, should any of them predecease Mrs. Fisher, to the survivor or survivors of them.

Mrs. Fisher's estate consists of the Charlotte Street property, appraised for transfer inheritance tax purposes at $7,500, and personal property of approximately $16,840. Miss Swenk's estate, exclusive of any interest in the estate of Mrs. Fisher, approximates $1,000.

It has been held that probate of a will may not be refused upon the ground that its provisions are in conflict with an alleged agreement to make different disposition of property: Norris' Estate, 329 Pa. 483, 492.

Counsel for contestant, however, contend that where there is evidence of a contract to make mutual or reciprocal wills, McGinley's Estate, 257 Pa. 478, is controlling. Involved there, as here, were the assertions of undue influence and a violation of a contract to make mutual wills. The facts, as set forth in the opinion of Mr. Justice Mestrezat, are:

"Susan McGinley, the decedent, and Stephen McGinley, her husband, each made a will on May 22, 1914, by which they gave all their property, after the death

of the survivor of them, to Mrs. McGinley's two nieces, the contestants in this proceeding. These wills were written by the same scrivener, executed at the same time, witnessed by the same parties, and are identical in form and effect, the name of the principal beneficiary in each being the only difference. The contestants introduced evidence to show that the two wills were executed, mutually and reciprocally, in pursuance of an agreement between the McGinleys and their nieces that, if the latter continued, as formerly, to care for their uncle and aunt as long as both lived, they were to have all the property of the McGinleys after the death of the survivor, and that the nieces performed their part of the contract, having taken care of Stephen McGinley until his death on September 9, 1914, and of Susan McGinley until within three weeks of her death, when she left the home of the nieces without cause and without their consent or agreement. It is, therefore, claimed that Mrs. McGinley violated her contract with her husband and her nieces, and, after his death, attempted to revoke her will of May 22, 1914, by making another will on April 6, 1915, the subject of this contest, by which she excluded her nieces and gave to strangers the estate which she owned in her own right and that which she received by her husband's will."

Finding no evidence that would permit a jury to find undue influence, the court below refused to award an issue to determine whether an irrevocable contract was made between the parties as alleged by contestants. The decree was reversed and an issue awarded. We do not conclude, however, that the case is authority generally that contracts to make mutual (or reciprocal) wills can affect subsequent testamentary disposition *at the stage of probate*. The opinion is concluded, significantly, by:

"This proceeding was conducted by the parties, and the question as to the validity of the alleged contract was determined by the court below on the theory that the contract, if valid, could be set up to defeat the probate of the will of 1915. In conformity with our practice, we have disposed of the appeal in like manner, and, hence, it is sufficient to say that we think the evidence justifies awarding an issue to determine whether an irrevocable contract was made between the parties as alleged by the contestants."

That is unlike the situation here existing. We conclude that the contract here asserted is a question of distribution and not of probate. An issue on this phase of the controversy is therefore denied. . . .